# WHEELING.

## DENT v. WAIT'S ADMR.

### July 17, 1876.

C. executes to W., appellant's intestate, a negotiable promissory note for a debt due from him to W., which note is endorsed by W. to The Second National Bank of Parkersburg for value.—When the note fell due it is protested for non payment and notice given to endorser W.—Judgment is had against maker and endorser—W. dies before execution issues—Execution issues against the maker, who with D. as his security, executes a forthcoming undertaking to the creditors to an amount equal to the debt. The same is perfected, execution awarded thereon, and D. compelled to pay the debt.

In a suit by D. to charge W's estate.—HELD :

That as C. was the principal debtor, D. cannot charge the estate of W., under the equitable doctrine of subrogation.

Appeal from, and *supersedeas* to, a decree of the circuit court of Wood county, rendered on the twenty-ninth day of July, 1875, granted upon the petition of S. S. Cook, administrator of the estate of Walton Wait, deceased.

The complainant below was George Dent, and the respondents, the said Cook, as administrator as aforesaid, Robert Crichton and The Second National Bank of Parkersburg.

The other facts are stated in the opinion of the Court.

The Hon. James M. Jackson, judge of said circuit court, presided at the hearing below.

6

1876.
June Term.

Dent
v.
Wait's Admr.

C. C. Cole and *Okey Johnson*, for the appellant.

*John A. Hutchinson* for the appellee.

EDMISTON, JUDGE :

This is an appeal from a decree of the circuit court of Wood county. George Dent filed his bill against one Robert Crichton, S. S. Cook, administrator of Walton Wait, deceased, and The Second National Bank of Parkersburg. In his bill he alleges that the Second National Bank of Parkersbug, at the spring term, 1872, of the circuit court of Wood county, obtained a judgment against Crichton and Wait for the sum of $256.70, with interest thereon from the sixth day of September, 1871, till paid, and $17.15 costs, and files an abstract of said judgment as part of his bill. This abstract simply shows that a judgment in favor the Bank was rendered against Crichton and Wait for the sum alleged in the bill. The bill then alleges that Wait departed this life during the said term of court at which said judgment was rendered ; that execution on said judgment was sued out against Crichton which went into the hands of the sheriff and was levied upon the property of Crichton, and that Crichton gave a forthcoming undertaking with the complainant Dent as his security, by which they bound themselves to pay the sum of $350, in the event that said Crichton failed to deliver to the sheriff the property levied upon, on the day of sale ; that the property was not delivered, and that such proceedings were had that a judgment was rendered on said forfeited undertaking for the sum of $350, the penalty, but to be discharged by the payment of $299.50, with interest thereon from the date of the bond and costs. He then charges that execution issued on this judgment and he was compelled to pay and discharge the same, said Crichton having become insolvent. It is then alleged that it will appear by the abstract of said judgment filed that said judgment was the joint debt of said Crichton and Wait ;

that the plaintiff by signing said undertaking became security for the original debt; and that by reason of his having paid off and discharged said execution to the said Bank, he is entitled to be substituted to all the rights of said Bank against the said Crichton and the estate of said Wait, subsisting at the time he became bound for the payment of said debt; and that he is entitled to a decree against Crichton and the estate of Wait for the amount of the said original judgment with interest and costs.

Cook, the administrator of Wait, files his answer and claims that the debt on which said judgment was founded was not the joint debt of Crichton and Wait; and shows by filing the original note on which the judgment was founded, that it was a negotiable promissory note executed by Crichton to Wait for an amount alleged to be due from Crichton to Wait; that Wait endorsed said note to the Bank and drew the value thereof from the Bank; that the note being dishonored was protested for non-payment, and, under the act of assembly, a joint judgment was obtained thereon, and this is the judgment exhibited in the plaintiff's bill.

I might remark here that the allegations in the bill that it was the joint debt of the said Crichton and Wait, is, to say the least, under the circumstances disclosed in the cause, rather too general. It should have shown more clearly the nature of the obligation on which the judgment was founded and the true relation that the parties thereto sustained to each other, that the court could have seen more satisfactorily what the obligations of the parties were, and what the right of the plaintiff would be under the facts and circumstances of the case. But the pleader left the true facts to be developed by the defendant. This the defendant has done, as above stated, by filing the original note, protest and declaration, as an exhibit with his answer.

The cause came on to be heard upon the bill taken for confessed as to Crichton and the Bank, answer of Cook, administrator, replication thereto, and the exhibits filed

1876.
June Term.

Dent
v.
Wait's Admr.

in the cause. The note, protest and declaration, filed as an exhibit with the answer, agree in amount, date and every particular, with the amount, date, &c., contained in the judgment filed as an exhibit with the bill and it is clearly the same debt ; but as these papers are not properly proven or authenticated, it is claimed here that this Court cannot look to them as evidence in explanation of the case. We think, however, that as no objection was taken to them in the circuit court, where the supposed defect could have been remedied, it comes too late here for the first time. But if this be not so, and the facts stated by the defendant be excluded, the plaintiff, under his defective bill, would have no case on which the Court could decree in his favor.

The circuit court on this state of facts gave the plaintiff below a decree against the estate of Wait for the sum prayed for.

The question presented to this Court for review is, is this decree right? There is no doctrine better settled in this State, than that where a security pays a judgment for another, he is entitled to be substituted to all the rights and remedies of the creditor against the principal debtor, subsisting at the time, he became so bound for the debt. *Robinson v. Sherman,* 2 Gratt. 178 ; *Preston v. Preston,* 4 Gratt. 88 ; *Hill v. Manser,* 11 Gratt. 522, and numerous other cases might be referred to. This doctrine is founded upon no statute, nor does it grow out of any contract, but it is simply the custom of a court of equity, founded upon principles of equity and justice, and such as are necessary to be enforced, so that full and complete justice shall be done, as to the rights of all parties in interest. One of the fundamental principles governing the courts in enforcing this doctrine, which will be found to pervade all the cases on the subject, is that the court will not violate any legal right, by increasing the legal liability of any one of the parties in interest, in enforcing its decrees. It will respect and be governed

1876.
June Term.

Dent
v.
Wait's Admr.

by the legal rights existing between parties and even respect and enforce the superior equities existing. As, for instance, if there be a security for the debt, and the principal debtor does an act by which he introduces a second security, in such a way as it would operate to the relief of the first security, and the responsibility falls upon the second security, it will not revive the liability of the first security in favor of the second, but it will give to the second security all the rights and remedies of the creditor, as against the principal debtor, though it will not, as to the first security. This doctrine is fully established and illustrated in the case of *Preston v. Preston, ante.*

In that case Wm. P. Floyd as principal, with Jno. B. Floyd, John Preston and Thomas L. Preston, his securties, executed a bond to James Rea for $1,000. In 1841 Rea obtained a judgment against Wm. P. Floyd principal, Jno. B. Floyd and John Preston. In 1842 he recovered a judgment against Tho's L. Preston the other security. On the first judgment an execution issued and the property of Jno. B. Floyd, a security, was levied upon. Jno. B. Floyd gave a forthcoming bond with Tho's L. Preston as security and judgment was rendered thereon. The principal debtor, Wm. P. Floyd, and Jno. B. Floyd, had now become insolvent. T. L. Preston was compelled to pay the debt. On his bill to compel John Preston to contribute one moiety of the debt as a co-security, it was *held* that the rule was that all securities should contribute equally, but if one became insolvent his share should be apportioned among the solvent securities; but that in that case it appeared that the execution had been levied upon the property of John B. Floyd and his proportion of the debt would have been made out of his property, but for the execution of a forthcoming bond in which T. L. Preston joined as security, whereby Jno. B. Floyd's property was released. Justice therefore required that the loss of the share of Jno. B. Floyd should fall on T. L. Preston and not any

part of it on Jno. Preston. And the decree of the court was, that under the circumstances, the security Jno. Preston, should only contribute one-third of the debt; that T. L. Preston should be charged with his equal third as well as with that of Jno. B. Floyd's third. The same equitable principles are clearly enunciated in the case of *Langford's Exor. v. Perrin,* 5 Leigh. 552. These cases, with many others, treat more particularly of the doctrine of contribution, but it is in reality the same doctrine and upon the solution thereof often depends the redress to be had in the disposition of the case, when the application of the doctrine of substitution is to be made.

The case of *Douglass v. Fagg,* 8 Leigh 588 is a leading case on the doctrine of substitution. Judge Parker, in his opinion says, at page 598, "that all those who are bound for a debt for others, or with others, by whom they ought to be discharged, either wholly or in part. have a right, upon paying, to demand a cession of the actions of the creditor against the other debtors.  *  *  *  * The doctrine of subrogation, it must be remembered, is the offspring of natural justice, and is not founded in contract. It is the creature of equity, and is so administered as to attain real, essential justice, without regard to form. He who, in administering it, would stick in the letter, forgets the end of its creation, and perverts the spirit which gave it birth." It was attempted, says Judge Parker, to charge Draffin because some of the books lay down the broad proposition "that a surety paying may require the creditor to subrogate him to all his rights, actions and hypothecations against all persons liable for the debt. But the courts, in applying the doctrine, have taken care to make it subserve the end of justice. Thus they always inquire who is the *principal debtor,* and if any one comes into his room, as to the creditor, they absolve previous sureties; holding that the supplemental surety comes also into the room of the principal debtor, as to these previous sureties.

Authorities to an indefinite extent might be multiplied

-to the same effect, but it is deemed useless, as they are familiar to all ; and the doctrine is common to all courts both in England and the United States.

In the case before us the doctrine of subrogation is attempted to be applied and enforced, and the question for our consideration is, was it properly applied under the facts in the case. The plaintiff seemed to rely upon the broad proposition "that he was a security and had paid the debt" and therefore he had the right to be substituted to all the rights of the creditor against all persons liable for the debt. The decree is based upon this broad proposition. What were the facts? Crichton being indebted to Wait, for property purchased of him, executed to him a negotiable promissory note for the amount of that debt, and Wait raised the money thereon by endorsing it to the Bank. Who was the principal debtor? One answer alone can be given and that is that Crichton was the debtor. Wait was the payee, the money was due to him until he endorsed it over. This did not make him a principal debtor, his liability upon his endorsement was contingent until the note was protested and notice given to him thereof. Then he became liable to the Bank with Crichton for it, and a joint action could be maintained against them by the Bank. This was done and thus the judgment claimed in the bill was obtained. But it cannot be claimed that because this action could be maintained against maker and endorser, that it changed their relations to each other. Crichton was still the principal debtor, Wait was the payee and endorser. If Wait had paid this note at or before protest, or after he could have sued Crichton as maker ; if he had paid the judgment, he could have recovered the amount from Crichton. So it is clear the relation that existed between them when the note was executed was never changed.

Now when the execution issued against Crichton, the real debtor, and was levied upon his property, if the

property had been sold, the debt would have been paid by the right party and Wait's liability would have ended. But by the act of Dent the property of Crichton is relieved from sale, the debt is not paid, until Dent pays it under the execution awarded on the forthcoming bond. Now under many decisions of the court of appeals of Virginia, the judgment at law is satisfied upon the execution and forfeiture of a forthcoming bond and Wait was entirely relieved from liability to the creditor while the bond remained in force. See *Garland v. Lynch*, 1 Rob. 545 and many cases therein referred to.

Upon the satisfaction made by Dent he was the security of Crichton not Wait. He relieved Wait at law and being relieved at law his liability will not be revived in equity under the equitable doctrine of subrogation.

In *Perrins v. Ragland*, 5 Leigh. 552, Carr, Judge, in speaking of the second security says : "Another friend of the debtor comes and says 'I will be surety for the property let the debtor have it.' The first surety tells him, 'if he does this it is at his hazard. I am now clear and will keep so.' Should the second security be allowed to to say 'I have paid this execution, you were once bound for it and must therefore contribute.' Surely not.'"

. In the same case Judge Tucker says, "by the levy of the execution upon the property of the principal debtor, the sureties in the original bond were relieved of their responsibility."

In the quotation above, from Parker, Judge, in *Douglass v. Fagg*, he says expressly : "That the courts in applying the equitable doctrine of subrogation take care to make it subserve the ends of justice. Thus they always enquire who is the principal debtor, and if any one comes into his room as to the creditor, they absolve previous sureties, holding that the supplemental surety comes also into the room of the principal debtor, as to these previous sureties.

It was claimed that Wait was not a surety, that he was a joint debtor and therefore he was responsible to

Dent. I have shown that he was not the principal debtor; and that that is what a court of equity looks to in granting relief in the administration of the equitable doctrine of substitution—That the act of assembly giving a joint action against the maker and endorser of protested paper does not change their original relation to each other.

Now I do not deem it material to consider what is the legal relation existing between the maker and endorser of such paper; whether it is that of principal and security or not. I am inclined to the opinion that it is not; but that question is not material in this case and no opinion is expressed as to it.

I am therefore of opinion that the decree in this cause is erroneous and that the same be reversed and annulled, with costs to the appellant.

And this Court proceeding now to enter such decree as the circuit court should have entered it is adjudged and ordered that the bill be dismissed and the plaintiff do pay to the defendant, S. S. Cook, his costs by him expended in the circuit court.

The other Judges concurred.

DECREE REVERSED AND BILL DISMISSED.