## SCHOONOVER ET AL, vs. ALLEN, AD'R, ET AL.

**1. SUBROGATION.**

Wyse, as administrator of Strickland's estate, held a note against Ratcliff, upon which the plaintiffs were sureties. Ratcliff died and Wyse had the note allowed in the Probate Court against his estate, and recovered judgment on it in the Circuit Court against the sureties. Strickland's estate owed Armstrong a large debt, and Wyse satisfied it *pro tanto* by assigning to him the Circuit Court judgment, but not the Probate Court allowance. The sureties paid most of the judgment to Armstrong, and being threatened with execution for the balance, filed this bill against Wyse, and Ratcliff's administrator, and the sureties on his bond, to be subrogated to the allowances against Ratcliff's estate to reimburse them what they had paid, and enable them to pay to Armstrong the balance of the judgment. They also charge fraud and waste against Ratcliff's administrator, and ask that he be held to a new account. HELD, *upon demurer*, that they were entitled to the relief asked.

Schoonover et al, v. Allen Ad'r, et al.

APPEAL from *Randolph* Circuit Court in Chancery.

Hon. L. L. Mack, Circuit Judge.

*Henderson & Caruth* for Appellants :

The payment to Wyse of Armstrong's debt, gave plaintiffs all the rights and remedies he held for his protection, and Equity will keep the judgment alive and in full force for their protection. They are subrogated, given his standing, for the enforcement of all remedies available to him. 35 *Ark.*, 24 ; *Bispham Eq., Sec.* 335 ; 1 *Story Eq. Jur., Secs.* 567, 635, 638 ; 16 *Ark.*, 216 ; 31 *Ib.*, 411 ; 32 *Ib.*, 346.

When the bill was filed, the appellants had not paid the debt *in full*, but Armstrong was not hindered in enforcing its collection. He accepted the judgment *in full satisfaction of his debt against Strickland. The debt due by the securities was paid in full to Wyse, the creditor,* and accepted as such.

Wyse did not assign the probated allowance to Armstrong ; so that in fact there was no creditor as between the securities and the estate of H. W. Ratcliffe, having the slightest legal or equitable interest in the payment from that estate. Wyse was paid and discharged. The debt never having been paid by the estate of Ratcliffe, is a subsisting one for the protection of his sureties. See cases cited *supra.*

The chancellor misconstrued the doctrine declared in *McConnel vs. Beattie,* 34 *Ark.*, 113. Had Wyse retained the judgment against appellants, and the allowance against Ratcliffe's estate, appellants would be postponed until full satisfaction of his debt. But Wyse has no interest to protect. Armstrong *never* had any legal claims against that estate. There is no one standing before appellants ; no one with a superior right. They alone are interested, and are entitled to subrogation. Armstrong has no interest in the suit, and was not a necessary party.

*W. H. Cate* for Appellee,

The points raised by the demurer are :

1. Appellants' remedy was complete and adequate at law, and having failed to avail themselves of their legal rights, and to become judgment creditors either in Circuit or Probate Court, they cannot now come into Equity. *Gantt's Dig., Secs.* 5697–5704; *Mugge vs. Ewing, Am. Law Register, N. S.* 6–127.

2. That appellants as sureties did not pay to the original creditor as must be done to be subrogated to his rights and have assignment of secureties held by him, but paid to a stranger who had no equities.   Subrogation arises out of a payment to ORIGINAL creditor.   *Wilkes vs. Harper*, 2 *Barbour*, 338.

3. The transaction between Wyse and Armstrong had the effect to extinguish both the debt Strickland's estate owed Armstrong and the debt Ratcliffe's estate owed Strickland's estate, the latter being thus paid by Armstrong who is a third party, and a payment by him unquestionably EXTINGUISHES the debt.   *Standford vs. McLean*, 3 *Paige*, 122; *Banta vs. Garma*, 1 *Sandford*, 385; *McKee vs. Ammonett*, 6 *La. Ann.* 207.

4. Appellants have not paid all the debt, and while any remains unpaid they cannot have subrogation as asked.

Appellants however insist that Wyse got all his debt of Armstrong, &c., but this does not aid them as to be surogated to Wyse's interest in the probate allowance they should have paid the debt to him; the payment by Armstrong breaks the chain of equities.   They should also have paid in full as the security cannot be divided, and it must be paid by the SURETY HIMSELF; he cannot avail himself of a FULL PAYMENT of the debt by any other person.   *McConnell, Adm'r. vs. Beattie, Adm'r.*, 34 *Ark.*, 113; *Gilliam vs. Esselman*, 5 *Sneed, Tenn.*, 86; *Brandt on Suretyship and Guaranty*, 352; *Sheldon on Subrogation*, 146.

Schoonover et al, v. Allen Ad'r, et al.

5.   The estate of Strickland was wound up and Wyse, the administrator, discharged before this suit was brought; to undertake to revive it now would necessitate the reopening of the administration of Strickland's estate and perhaps involving the rights of innocent persons long ago supposed to be settled.   This cannot be done as no subrogation can take place where it will conflict with or disturb the intervening rights of other parties.   *Mosier's Appeal*, 57 *Penna St.*, 76.

6.   But if this probate judgment still exists or has sufficient vitality to be of any value to appellants, then it is of value and belongs until otherwise decreed, to some one else, not to Wyse, because he never had any but a fiduciary interest in it, which closed when he was discharged as administrator of Strickland, which was before this suit, and he could be no proper party.   It is still the property of the Heirs or Representatives of Strickland and they can not be divested of it until they have notice, and are properly before the Court which is nowise the case here.

7.   Again appellants charge fraud and waste aginst T. J. Ratcliffe, and ask that his administration be opened and reviewed, and that a large sum of money be decreed them against him and his sureties as administrator.

No one is entitled to such a decree except heirs, creditors, &c., of the estate of H. W. Ratcliffe, and if, as a fact, T. J. Ratcliffe has wasted a large amount of the assets of said estate, it is a matter of some interest to these Heirs, creditors, &c., but cannot concern others; but appellants ask to have assigned to them an allowance against said estate and thus become creditors of the same and be allowed a large interest in the assets thereof, but they fail to make any administrator or heir or any one else as representative of said estate a party defendant, who might be able to show that said allowance was not legally obtained, or was paid, or make any other defense thereto.

T. J. Ratcliffe was a proper defendant and represented himself and the estate of H. W. Ratcliffe as the administrator, but he died pending this suit and before answering the same, and a revival was had against J. H. Allen as administrator of T. J. Ratcliffe, but Allen as such administrator can only represent the interest T. J. Ratcliffe individually, and has no interest in and does not represent the estate of H. W. Ratcliffe, the original principal debtor, and Allen, appellee, insist that appellants cannot maintain any suit against his intestate for waste or fraud in the estate of H. W. Ratcliffe until they have an adjudicated interest in said estate, and this they cannot acquire until some proper representative of said estate is made a defendant hereto and has a day in Court.

### 'STATEMENT.

EAKIN J.   This is a bill, by sureties, for subrogation and general relief.   A demurrer was sustained for want of equity. Complainants rest, refuse to amend, and the bill being dismissed, appeal.

The material facts shown are substantially as follows: Wyse, the administrator of Strickland's estate, held a note against Ratcliffe, upon which complainants were sureties. Ratcliffe died, and Wyse had the note presented and allowed against his estate.   Afterwards he sued complainants at law, and obtained judgment against them in the Circuit Court.   The estate of Strickland owed Armstrong a large debt.   He agreed to take the Circuit Court judgment in payment *pro tanto*, and it was assigned to him by Wyse as administrator of Strickland, in discharge of so much of his claim against Strickland's estate.   The probate allowance was not assigned.

Ratcliffe's sureties, defendants in said judgment, after paying something more than half the debt, leaving still due over a thousand dollars, being threatened with execution, filed this bill to be subrogated to the allowance made in

Schoonover et al, v. Allen Ad'r, et al.

favor of Wyse as administrator, making him and the adminis-
trator of Ratcliffe, with the sureties of the latter, all par-
ties.

That the subrogation may be effectual, they charge fraud
against the administrator of Ratcliffe, with waste, and ask
that he be held to a new account, and that the amount due
on the allowance of Wyse be paid to them, for reimburse-
ment of amounts paid, and to enable them to satisfy fully
the judgment held by Armstrong. The latter is not made a
party. Wyse answered acknowledging full satisfaction of
the debt due Strickland's estate by the arrangement with
Armstrong; and disclaiming any further interest in the
allowances.

Pending the suit, Ratcliffe's administrator died, and it
was revived against his administrator who demurred. He
assigns as grounds, misjoinder of defendants and want of
equity in the bill.

### OPINION.

The nature and grounds of subrogation are very clear.
The difficulties arise in its application to the innumerable
complications of business. "It is," says Mr. Bispham,
(*principles of Eq., Sec.* 335)"the equity, by which a person who
is secondarily liable for a debt, and has paid the same, is put
in the place of the creditor so as to entitle him to make use
of all the securities and remedies possessed by the creditor,
in order to enforce the right of exoneration as against the
principal debtor, or of contribution against others who are
liable in the same rank with himself."

"So also," he says "if a co-surety has a security from the
principal, the surety paying the debt, will be entitled to the
benefit of his security;" and further, "the same doctrine is
also frequently applied when a junior encumbrancer is com-
pelled for his own protection to pay off a prior lien."

These are but instances. It is extended by Courts of

Chancery, sometimes, to cases of payments by persons not legally bound to pay, but who do so, not as volunteers, but with a well founded expectation, justified by the conduct or contract of the debtor, that they will be entitled to hold all the securities for their indemnity which the creditor had against the debtor.   Such was the case of *Chaffe & Bro., vs. Oliver,* 39 *Ark.* 531, decided by this Court at the present term. The cases depend much on their circumstances, the general idea prevailing, throughout, that except in cases of interventionby a mere stranger, one who discharges a burden for which another is primarily liable, whether it be done under legal compulsion, or to protect his own interests, or upon a clear understanding for the purpose with parties to be affected, will be entitled to use, for his reimbursement, all securities for the debt held by the creditor or a co-security, unless the exercise of that right should interfere with some superior equity in another.   The whole matter is fully discussed, and cases cited, in the notes to the case of *Deering vs. Earl of Winchelsea, Vol.* 1, *of White and Tudors,* leading cases in equity.

It is not essential to this right, that the surety should have paid the full amount of the debt in money, provided the creditor be satisfied (*ubi supra.*)   If he has discharged the burden, leaving in the creditor nothing further to demand, he will be entitled to subrogation, but only for indemnity to the extent of the money paid or value of the property applied.   He may not speculate upon the principal. The general rule that subrogation will not be allowed for partial payment extends only so far as its reason goes.   The reason is that the creditor cannot equitably be compelled to split his securities, give up control of any part until he is fully satisfied.   It accords with the limitation that subrogation will not be enforced against a superior equity.   But if the debt, as to the creditor, be satisfied, he has no equity left

to be displaced.   He has gone out, and no one else  has  any right to object.  This is intimated in *McConnell, Adm'r vs. Butler, Adm'r,* 34 Ark., 113.   The right of the creditor  to retain the security for the unpaid balance, was the ground for refusal of subrogation in *Williams vs. Owen,* 13 Simons 597. See also *"Sheldon on Subrogation,"* p. 127, and *Story's Eq., Jur.* Sec. 502.

When Wyse, as administrator of Strickland's estate, by a judgment against complainants, at law, subjected their property to the direct operation of an execution, and made it subject to all judgment liens, and used this judgment as property in satisfying a debt due from the estate to Armstrong, who received it in satisfaction, it was in all respects the same, both to Wyse and Ratcliffe's estate, as if they as sureties had paid so much money to Wyse, and he had used it in paying Armstrong.   The allowance, for the same debt, against Ratcliffe's estate was no longer useful to Wyse, and Armstrong does not claim the right to use it, if he has it. But it remained essential to the protection of the sureties who had in effect satisfied the debt.   Their equitable right to that protection is indisputable.   The representative, of Ratcliffe's estate cannot object to it without claiming to enrich the estate by the misfortunes of the sureties of the intestate, a claim shocking to a court of equity; for Wyse has no longer any interest in the allowance, and Armstrong does not own it, nor have any need to enforce it.   It would be better practice to bring Armstrong into court to receive upon the balance of his judgment, what may be realized by the subrogation, and thus close all matters more effectually, but he is not a necessary party.   The estate of Ratcliffe is liable for the whole amount, and the right of complainants to subrogation became complete upon the satisfaction of the allowance, when the assignment of the judgment was made by Wyse.   That they have partly paid the judgment only

strengthens their equity pro tanto, without defeating it as to the balance. The bill set up equities, which if sustained upon hearing, entitled complainants to relief, and the Chancellor erred in sustaining the demurrer to it, and dismissing it upon their declining to amend.

Upon another branch of the case the Court is of opinion, that there were such allegations of fraud, waste, and mismanagement on the part of Ratcliffe's administrator, as, if true, would justify the interference of a Chancery Court to surcharge and falsify the accounts, or entirely set aside the settlements and compel an accounting *de novo*, as the circumstances might require. What these special charges and their nature may be, it would not be prudent now to discuss, as they have never been answered, nor admitted, save technically for the purpose of a demurrer. The Chancellor upon hearing may sift out such as indicate fraud, demanding correction; and distinguish such as standing alone could only be corrected by appeal—always bearing in mind that Courts of Equity interfere with ordinary jurisdiction of the Probate Courts only so far as may be necessary to relieve against fraud, or such mistakes and accidents as would be otherwise remediless, and for the purpose of bringing in the sureties of the administrator to hold them liable upon accounts so adjusted. Complete justice may sometime be best done by surcharging and falsifying only as to items, leaving the accounts otherwise to stand—although when fraud seems to permeate the whole, the settlements should be set aside altogether and new ones ordered.

The right of subrogation gives the complainants the right to invoke the aid of equity, upon such proof as they can make, if it be sufficient; and all may well be done in one suit.

We notice that pending the suit the administrator of Ratcliffe, whose settlements and conduct are attacked, died; and

St. L., I. M. & S. R'y Co,, ex parte. Petition for Certiorari to Craig-
head County.

the suit was revived against his administrator. So far is
proper, but as the allowance is against the estate of H. W.
Ratcliffe, that estate should be represented in this suit, and
a proper administrator *de bonis non* should be brought in,
that upon any final decree to be rendered, the Court may
adjust all equities, and bind all parties.

For error in dismissing the bill, reverse the decree and
remand the cause for further proceedings consistent with
this opinion, and the principles and practice in equity.