# CHARLESTON.

NEAL *et al. v.* BUFFINGTON *et al.*

Submitted June 17, 1896—Decided Nov. 18, 1896.

1. PRINCIPAL AND SURETY—SUBROGATION—LIENS AGAINST PRIN-
CIPAL DEBTOR.

A surety can not have subrogation until he has actually paid
the debt in full; but, on part payment, even without that, he may,
when the debt is due, sue in equity both the creditor and prin-
cipal debtor, to compel such debtor to pay the debt out of his own
property in exoneration of the surety, and may have enforced
for his relief any liens which the creditor has on the estate of his
principal. If the surety has paid part, he may in such suit have
subrogation to the creditor's liens after satisfaction out of the
·debtor's property of the balance due the creditor.

2. PRINCIPAL AND SURETY—SUBROGATION.

A surety in bonds given by a debtor for rent of his own land,
rented by him under decree to pay liens binding the land, and
paying the same for his principal, may be substituted to such
liens against the land. Such renting does not discharge the liens,
as between the principal debtor and his surety.

WILLIAM BEARD for appellant, cited 17 W. Va. 276; 5
W. Va. 377; 21 Gratt. 182; 4 S. E. R. 452; 20 W. Va. 429;·
22 W. Va. 444; Code, c. 139, s. 7; 2 Brandt, Sur. (2d Ed.) §§
305, 265; Code, c. 134, s. 4; 5 Sneed (Tenn.) 89 (2 syl.);
Code, c. 101, ss. 1, 2.

HUTCHINSON, HUTCHINSON & CAMDEN for appellees, cited
3 Barb. Chy. 169; 42 N. Y. 89; 3 Paige, 614, 642 and 648;
11 Wend. 312; 53 Vt. 325; 2 Am. Lead. Cas. (5th Ed.) 412;
1 Bland, Chy. (Md.) 103, 105; 9 Gratt. 398 and 404; 10
Leigh, 206-221; 11 Paige, 21; 66 N. Y. 366; 3 Paige, 117; 5
Paige, 285; 9 Cowen, 206; 4 Wend. 367; 6 Paige, 32, 521; 2
Leigh, 29; 1 Johns. Chy. 414; Story Eq. Pl. (10th Ed.) sec.
455; 2 Bouvier Law Dic. 417; 97 N. Y. 395; 8 W. Va. 674;
11 Gratt. 522; 116 N. Y. 566; 29 W. Va. 480; 64 N. Y. 397;

70 N. Y. 550; 82 N. Y. 155; 95 N. Y. 346; 8 W. Va. 674; 8 Leigh, 588; 11 Gratt. 522; 29 W. Va. 480.

BRANNON, JUDGE:

In a chancery suit of Johnson, Sutton & Co. against G. W. Buffington & Co. certain judgments were adjudged to be liens on land of G. W. Buffington, and the lands were rented under decree in it, Buffington himself becoming renter; and he gave five notes for the rent, with D. R. Neal, W. J. Robb, and P. D. Neal sureties; and the Neals paid off the first bond, and judgments were had on the others, a part of one of which judgments was paid by said Neals, and the others yet remain unpaid. These sureties brought this suit against Buffington and others to compel Buffington to pay the debt in exoneration of them, and to reim-burse their payments, claiming the right to be subrogated to the liens against Buffington declared in the Johnson, Sutton & Co. case. A decree gave the plaintiffs relief by decreeing them repayment of what they paid, and Buffington appeals.

One point made by appellant is that there was no re-plication to his answer, and on this point stress is laid. The decree says that the cause was heard on the an-swer of G. W. Buffington, Sr., and G. W. Buffington, Jr., "with general replication to each of said answers." There is no more formal or prior entry of a replication, but this affirms that the court heard the case on an oral general replication, thus showing there was one. That is common practice and sufficient.

Upon the demurrer and merits we must decide the ma-terial question whether plaintiffs can maintain this suit. It is contended that, as the sureties have not discharged the liability in full, they can not have subrogation to the liens decreed in the first suit. So the general rule is put in the books. Brandt, Sur. § 306; Sheld. Subr. § 127. A surety can not have a decree in his favor for the money, or compel the creditor to assign or cede or in any way de-tract from his securities until full payment. Till then he can not prejudice the creditor. But, when he pays part, he is substituted to the creditor's lien to that extent, sub-

ject to the creditor's priority for the balance. But, before paying anything, he has rights. On the principle of *quia timet*, he can sue to compel the principal to pay the debt to his relief. In *Stephenson* v. *Taverners*, 9 Gratt. 398, 404, Judge Moncure said: "When this suit was brought, the appellant had not paid the debt, and probably has not paid it yet. But he is entitled, nevertheless, the debt being due, to come into equity, by bill *quia timet* against the creditor and debtor, and compel the latter to make payment, so as to exonerate himself from responsibility. Story, Eq. Jur. §§ 327, 639, 849. He may enforce, for his exoneration, any liens of the creditor on the estate of the principal." He could not sue the debtor alone, claiming the right to payment in order that he might discharge the debt; but where is the reason, when he has paid part, against his bringing creditor and principal debtor in, and enforcing the lien for the payment of the balance to the creditor first, and then to reimburse him his partial payment? This is clearly law in many cases. Sheld. Subr. § 130. The surety can make the debtor do what he ought to do—pay his own debt out of his own property to save the surety's property.

But it is strenuously urged that, when Buffington's land was rented, that satisfied the judgment, so that there is nothing for the sureties to be substituted to. For this Judge Johnson's opinion in *Rose* v. *Brown*, 11 W. Va. 122, is cited, wherein he said that renting land was as much enforcing the liens of judgments as if sales were directed. Certainly. There are two modes of enforcing judgments against land, by sale and rental. If a man's land be sold or rented to third parties, whether the money be realized therefrom or not, he may say his liability is paid. But how if he himself purchases or rents? Can he say to his sureties for the rent or purchase money, "You pay it; but you can not come back on me or my property, because the renting or sale satisfied the liens?" Here Buffington rented and promised to pay the money to discharge these very judgments, but failed to do so. Surely he can not, in equity, say to sureties who have furnished the money to pay the debts he agreed to pay that the renting satisfied

them. He can not thus take advantage of his own wrong against his good friends, the sureties. He yet owns the land, pays no rent, but tells them the liens are gone. If he can do so in this case, a debtor might deny subrogation to his surety in any case, on the ground that the surety had destroyed the lien. This debt never was paid. The debtor only gave further security for it in the rent bonds, like a debtor gives further security in a forthcoming bond; and *Hill* v. *Manser*, 11 Gratt. 522, says: "A surety in a forthcoming bond is a surety for the debt, and, when he pays it, he is entitled to all the rights of the creditor against the original debtor subsisting at the time he became bound for the debt."

The appellant complains of the character of the decree. Having the debtor, the creditor, and the sureties parties, the decree should have said how much remained unpaid to the creditor (Casto, commissioner) on the rent bonds, and how much was to be paid to the sureties to repay what they had paid, and thus have told Buffington just how much his land was to raise, and should have given priority for balance due Casto over the plaintiffs' claim. The decree simply decrees a certain sum to reimburse the sureties the part of the rent debt they paid. As Casto is not complaining, the failure to give him priority may not be reversible error. But the vice of the decree, of which Buffington can complain, is that it does not fix any sum for balance due Casto, decreeing neither for nor against the existence of anything due him, when the record shows a large balance. It does not adjudicate and fix the rights of the parties as legally resulting upon the facts in the record. Where there are different sums existing as liens, the decree must ascertain them, and their amounts and priorities— plainly do so. *McClaskey* v. *O'Brien*, 16 W. Va. 791 (point 12); *Marling* v. *Robrecht*, 13 W. Va. 440. Buffington asks a reversal for this matter. We can not deny that there is error in this, on any theory I see, but by saying that, as the whole matter was before the court, and it having decreed a certain sum to the plaintiff, neither they, as sureties, nor Casto, have any rights as to any balance as against Buffington, the decree precluding further claim; but such

was not the intent, we suppose, and Buffington does not rely on this, but asks a reversal. It would be against the plain justice, if tenable. What, then, shall we do—reverse or amend? Following *McCleary* v. *Grantham*, 29 W. Va. 301 (11 S. E. 949) we will amend the decree, and adjudge, order, and decree that Buffington pay Casto, special commissioner, one thousand, four hundred and twenty nine dollars and fifty cents, with interest from the 22d day of June, 1894; and, said Buffington being bound as principal for said sum of one thousand, four hundred and twenty nine dollars and fifty cents, he shall pay it in exoneration of D. R. Neal, Philip D. Neal, and W. J. Robb; and the same is a lien on the land subjected to sale by the decree of the 22d day of June, 1894, in preference to the sum of eight hundred and thirty seven dollars and eighty cents by that decree adjudged to said D. R. Neal, Philip D. Neal, and W. J. Robb; and that, unless both sums be paid within sixty days from the recordation of the mandate in this case in the circuit court of Wirt county, the land be sold as directed in said decree; and, as thus modified, said decree is affirmed, with costs to appellees.

Complaint is made that a reference to a commissioner was made to let the plaintiff prove his case. References entailing costs are often made improperly. Bart. Ch. Prac. 129; *Watkins* v. *Young*, 31 Gratt. 94. In *Livey* v. *Winton*, 30 W. Va. 554 (4 S. E. 451) the rule is stated that "it is improper to order an account merely to establish by testimony the allegations of the bill." Has this rule been violated in this case? The bill charged, and the answer did not deny, the suretyship of the plaintiffs for Buffington, and it only remained to know how much had been paid, who paid it, and what was unpaid of the rent debt, and the reference was to ascertain these matters. One payment by the sureties was alleged, and not denied. Another was developed before the commissioner not charged in the bill, but it was immaterial to Buffington whether its amount be charged as paid by plaintiffs or yet due to Casto. It involved calculation. It was matter of account. The basis of the account, except as to this second payment, thus appeared, and needed no proof. So we can not say it was referred

to enable plaintiffs to prove their case. As to depositions, so far as they bore on this account, they were properly taken under the notice for the reference, without other notice. Depositions were taken before the commissioner to prove facts to overthrow a tax purchase by Buffington's son of the land bound by the liens. This was improper, because that matter was not referred, and could not have been under the rule just stated; and, if the son were appellant, he might make this point, but he is not, his father being sole appellant.

The appellant presents the point that a convention of liens should have been had; but this was simply a suit to compel Buffington to pay a debt under rental notes to pay liens already convened in the old suit. Casto had judgment liens on some of the notes; but his rights and the rights of the sureties antedate these judgments, springing from the prior ones ascertained in the *Johnson, Sutton & Co. Case.*

The appellant says his answer traversed material allegations of the bill. I do not see it so. It admitted that the Neals and Robb had signed the rent notes as surety, and that he bid off the property as renter at the renting; but he says that, under a written contract, these sureties were to rent, or by later agreement were to pay the rent notes. This is not a direct traverse of the bill, but new matter in confession and avoidance of the matter of the bill, denied by the general replication, and resting on Buffington to make out, and he took not a step to do so.

Modified and affirmed.