# CHARLESTON.

BEESON H. BROWN *v.* JOSIAH V. THOMPSON *et al.*

(C. C. 345)

Submitted April 14, 1925.   Decided April 28, 1925.

1. SUBROGATION—*Claim to Subrogation May be Presented by Petition.*

   A claim to subrogation may be presented by petition.   (p. 62).

   Subrogation, 37 Cyc. p. 409).

2. SAME—*One Entitled to Subrogation May Adopt Procedure of Creditor to Whose Rights He Is Subrogated.*

   One entitled to subrogation may adopt the procedure of the creditor, to whose rights he is subrogated.   (p. 62).

   (Subrogation, 37 Cyc. p. 385 [1926 Anno.]).

3. SAME—*Surety Who Has Paid Part of Principal's Debt Is Entitled to Pro Tanto Subrogation Upon Satisfaction of Balance.*

   A surety who has paid part of the debt of his principal, is entitled to *pro tanto* subrogation upon satisfaction of the balance due the creditor.   (p. 63).

   (Subrogation, 37, Cyc. pp. 380, 415).

4. BANKRUPTCY—*Sale of Property by Bankruptcy Court Does Not Ordinarily Release it from Lien of Judgment by State Court More Than Four Months Prior to Bankruptcy.*

   The sale of property by a Bankrupt Court does not ordinarily absolve it from the lien of a judgment entered by a state court more than four months before the bankruptcy.   (p. 67).

   (Bankruptcy, 7 C. J. § 289).

   NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.
   99 W. Va.

Certified Questions from Circuit Court, Ohio County.

Suit by Beeson H. Brown against Josiah V. Thompson and others. On death of plaintiff, suit was revived in the name of John W. Brown, administrator. After judgment sustaining demurrer by D. M. Hertzog and another, surviving trustees of bankrupt estate of Josiah V. Thompson, and others, to amend petition by Albert Miller Hustead and others, the court certified questions.

*Affirmed.*

*Jay T. McCamic* and *McCamic & Clarke,* for *J. E. Hustead* and others.

*Nesbitt, Goodwin & Nesbitt, Reed, Smith, Shaw & McClay,* and *Poffenbarger, Blue & Dayton,* for Piedmont Coal Co., Ayrshire Corporation, and Union Trust Co., of Pittsburgh.

Hatcher, Judge:

Certain questions arising upon the sufficiency of an amended and supplemental petition filed in the above cause by Albert Miller Hustead, James Edgar Hustead, and Walter Bugh Hustead, have been certified here by the Circuit Court of Ohio County for decision.

This is one of the many actions growing out of the bankruptcy of J. V. Thompson, of Uniontown, Pennsylvania. The case of petitioners, as pleaded, follows. On July 2, 1914, a note was executed in favor of Beeson H. Brown for $107,435.87 by J. V. Thompson, principal, with J. M. Hustead and I. W. Semans, sureties. The note was not paid at maturity. On April 2, 1915, Mr. Brown instituted a suit in equity thereon against the principal and the sureties in the Circuit Court of Ohio County. A non-resident return as to the three defendants was made, an affidavit for attachment was filed, certain real estate of J. V. Thompson in Ohio County was levied on by the sheriff, an order of publication as to the non-resident defendants was made, and a decree *in rem,* based on the debt represented by the note, was obtained in favor of the plaintiff on August 5, 1916, against the attached lands of Mr. Thompson in the sum of $117,-749.64. Prior thereto, on April 20, 1915, a *lis pendens* was filed and recorded in the office of the county clerk

of Ohio County. Beeson H. Brown having died during this litigation, the suit was revived on November 26th, 1915, in the name of his personal representatives.

On September 10, 1917, Thompson was adjudged a bankrupt, and further prosecution of suits against him in the state courts was enjoined by the Bankrupt Court. Thereupon, the representative of Brown proceeded against J. M. Hustead, as surety of the Thompson debt, in a state court in Pennsylvania. Judgment was there obtained and by virtue of a sheriff's sale of Hustead's lands, the sum of $52,036.34 was derived and paid June 21, 1919 to Brown's representative on the Thompson debt. J. M. Hustead died pending the litigation, but prior thereto had granted to his sons, the petitioners in this case, the lands included in the sheriff's sale. Brown's representative then accepted an offer from the Bankrupt Court to release his remaining claim against the Thompson lands upon the payment to him of ninety per cent of the balance due. The amount paid Brown by the trustees in bankruptcy was $81,955.89. The statement of the Federal Court on this matter, as set forth in the petition, is as follows:-

> "There was due on the Brown judgment as of March 1, 1920, the amount of the original decree with interest, amounting to $144,234.57. The amended order of March 31, 1920, fixed the balance due Brown at $91,062.04. This was determined by taking from the full amount due, the prior Hustead payment of $52,036.43. Ninety per cent of this balance, together with the costs, was paid by the trustees to Brown's administrator."

At the same time, Brown's administrator assigned to Piedmont Coal Company, one of the demurrants of the said petition, and the purchaser of the lands of Thompson from the Bankrupt Court, all the right, title, interest, property, claim and demand whatsoever of the Brown estate to the Thompson debt, and to the lien on the Thompson land by virtue of the attachment suit in the Ohio County Circuit Court. There was specifically excepted and reserved by Brown from this assignment, as therein stated, "my said claim for which said attachment was levied to the extent that the same shall not be paid to me out of the estate of said bankrupt."

As the only payment received by the representative of Brown
on this debt not made by the Bankrupt Court was the
Hustead payment, it would seem that the involved language
of the exception in the assignment had reference to the
Hustead payment. Prior thereto, the Piedmont Coal Com-
pany had proposed to the trustees in bankruptcy to purchase
the Thompson property ''free and clear of all taxes, attach-
ments, and other liens.'' This proposition had been accepted
by the trustees in bankruptcy, subject to the court's approval.
After Brown accepted the amount above stated, and assigned
to the Coal Company his interest remaining in the Thomp-
son debt, the trustees' sale to the Coal Company was con-
firmed by a so-called ''consent decree'' of the Bankrupt
Court. To this decree, however, *neither Hustead nor Brown
consented*, according to the opinion of the Federal District
Court on this matter.

The Husteads never submitted their claim against Thomp-
son to the Bankrupt Court, and on June 4, 1921, filed a
petition in this case in the Circuit Court of Ohio County
setting out the proceedings theretofore had herein, their
payment of the said sum on the Thompson judgment and
their claim of *pro tanto* subrogation to the rights of Brown
against the attached land, etc. The Piedmont Coal Company
and its privy, Ayrshire Coal Company, filed a petition in the
Federal District Court on October 13, 1921, seeking to en-
join the petitioners from proceeding in the Ohio County
Circuit Court on the said petition. This matter was heard
and a decision adverse to the Coal Company rendered in the
case of *In re Thompson, Petition of Piedmont Coal Com-
pany, et al., in re Hustead*, 288 Federal 385. On appeal, the
judgment of the District Court was affirmed by the Circuit
Court of Appeals on November 2, 1923. 294 Federal 247.

Thereupon, the Piedmont Coal Company, et al., applied
to the Supreme Court of the United States for a writ of
*certiorari* to, etc., which was denied on February 18, 1924,
and an order entered declining to review the said decision
of the Circuit Court of Appeals. 44 Supreme Court Reporter
331. (Advance Sheets, April 1, 1924.)

Following which, the petitioners herein filed in the Ohio
County Circuit Court their amended and supplemental peti-

tion setting forth more fully the matters pertinent to their claims, wherein was copied at length the petition of the Piedmont Coal Company et al., before the Federal District Court, as well as the answer of these petitioners thereto. There is also copied in the amended petition the decision of the Federal District Court, and allegations are made detailing the litigation in and the decision of the Circuit Court of Appeals, and of the refusal of the Supreme Court of the United States to grant the *certiorari* thereto. These decisions are plead as *res judicata* in the instant case. The amended petition specifically adopts the answer of petitioners to the petition filed against them in the District Court. Among other things in the answer, is an allegation that the trustees in bankruptcy, as well as the Piedmont Coal Company, et al., had notice of the Hustead payment of $52,036.34, to Brown on the Thompson judgment, and that they availed themselves of said payment in making settlement through the Bankrupt Court with the creditor.

The parties to the amended petition are Josiah V. Thompson, D. M. Hertzog, R. M. Hite, surviving trustees in bankruptcy of the bankrupt estate of Thompson, the representative as well as the trustee in bankruptcy of the estate of I. W. Semons, John W. Brown, administrator of the estate of Beeson H. Brown, deceased, Piedmont Coal Company, Ayrshire Corporation, Union Trust Company, and Ohio County Fuel Company, the last four defendants being corporations. The last three named corporations hold certain claims under the Piedmont Coal Company to the attached lands. The demurrants are the four corporations and the trustees in bankruptcy.

In the brief of demurrants comprising 141 pages, the remedy, as well as the right of petitioners, is attacked. Thirteen points are advanced against the remedy, and seven points against the right. Many cases are cited in support thereof. Time forbids any attempt on our part to discuss separately these points and authorities. We perceive no useful purpose to be served thereby. We consider it sufficient to briefly advert to such equitable principles as we believe control the case presented by the amended petition. In the application

of these principles may be found, however, an answer to every question fairly arising on the demurrer.

## THE REMEDY

In the opinion of this court in *Dent* v. *Wait's Admr.*, 9 W. Va. 41, it was said:

> "There is no better doctrine settled in this state, than that where a security pays a judgment for another, he is entitled to be substituted to all the rights and remedies of the creditor against the principal debtor subsisting at the time, he became so bound for the debt. *Robinson* v. *Sherman*, 2 Gratt. 178; *Preston* v. *Preston*, 8 Gratt 88; *Hill* v. *Manser*, 11 Gratt. 522, and numerous other cases might be referred to."

So far as we are advised, there has been no intimation in any opinion of this court since the rendition of the above opinion that the doctrine of subrogation therein stated would be in any way restricted or departed from; on the contrary, that doctrine has been reiterated and affirmed in every case before this court in which it has properly arisen. *McNeil* v. *Miller, et al.*, 29 W. Va. 480; *Hawker* v. *Moore, et al.*, 40 W. Va. 49; *Blair* v. *Mounts*, 41 W. Va. 706; *Neal et al.* v. *Buffington, et al.*, 42 W. Va. 327; *Myers, et al.* v. *Miller, et al.*, 45 W. Va. 595; *George Admr.* v. *Crim, et al.*, 66 W. Va. 421; *Dudley, et al.* v. *Buckley, et al.*, 68 W. Va. 630; *Smith* v. *Davis*, 71 W. Va. 316; *Bassett* v. *Streight, et al.*, 78 W. Va. 262.

The remedy of Brown against Thompson at the time Hustead made payment on the Thompson debt was the attachment proceeding in the Circuit Court of Ohio County. Under the law cited, Hustead became entitled to be substituted to the remedy of Brown. That remedy being the attachment suit, it must necessarily follow that Hustead was entitled *to be substituted for Brown in that suit.*

In *Enders* v. *Brune*, 4 Rand. 445, the court, in treating the subject of subrogation, says:

> "In enforcing these principles, courts of equity look, not to the form, but to the essence of the transaction."

In *Hawker* v. *Moore, supra,* the court said in reference to the doctrine of subrogation:

> "The doctrine, as it has been expounded and applied in our courts, has nothing of form, nothing of technicality about it; and he who in administering it, would stick in the letter, forgets the end of its creation, and perverts the spirit which gave it birth."

If the doctrine as applied in our courts has *nothing of form, nothing of technicality,* why be captious about whether Hustead presents his claim by a petition in the attachment suit started by Brown in the Ohio County Circuit Court or whether he presents it by means of an original bill in which he would make the attachment proceedings a part? In Hogg's Equity Procedure, Carlin's Edition, paragraph 245, is the following:

> "Where a petition, sought to be filed in a pending suit, sets forth such an interest in the subject matter thereof as to make the petitioner a proper party to the suit, and he seeks by such petition to be made a party to it, it is the court's duty to entertain the petition, and have him made a party to the suit."

> Note 19 cites several West Virginia cases supporting the text.

Entry by petition of one claiming subrogation was tacitly approved in the recent and similar case of *Snowden* v. *Thompson,* 98 W. Va. 77, 126 S. E. 405. It therefore appears that the Husteads have proceeded herein in the regular and formal manner approved by the decisions of this court.

We cannot agree that the attachment suit was abated upon the assignment of his lien by Brown to the Piedmont Coal Company, as is advocated by demurrants. It was a pending suit undisposed of on the docket of the Circuit Court of Ohio County at the time of the filing of the Hustead petition. If Brown had not prior thereto received payment of the Thompson debt, he could, at the time of Hustead's entry into this suit, have proceeded to the collection of his

judgment. Hustead's claim was excepted from Brown's assignment to the Coal Company. What Brown could have done in this suit, Hustead can now also do.

> "Where one is subrogated to the rights and remedies of another under a judgment he may enforce the judgment to the same extent and within the same time that the original creditor could have enforced it."

*Smith* v. *Davis, supra.*

> "A surety in a forfeited forthcoming bond is a surety for the debt; and when he pays it as such surety, he is entitled to all the rights of the creditor against the original debtor, subsisting at the time he became bound for the debt; And the judgment, for the benefit of the surety so paying, is not extinguished but transferred with all its obligatory force against the principal, and constitutes a legal lien upon his real estate owned at the date of the judgment or afterwards acquired."

*Hill* v. *Manser,* 11 Gratt. 522.

> "The subrogee is, in general, entitled to stand in the shoes of the creditor, and to enforce every right which the creditor himself could have enforced, so far as necessary to secure reimbursement or contribution. This includes the right to enforce the principal obligation itself, *even though it be discharged at law,* and to claim all of the incidents of such obligation."

Pomeroy's Equity Jurisprudence, par. 2351, p. 5203.

## THE RIGHT

Demurrants deny the right of the Husteads to subrogation herein on the ground that the Husteads did not pay the entire amount of the Thompson debt. The rule is well established that in order for the surety to have subrogation, *the debt must be fully paid.*

In the opinion of the court in *Walker* v. *Walker,* 138 Tenn. 679, it is stated that:

> "The doctrine of subrogation is steadily expanding in its practical administration so as to

embrace all cases where complete justice cannot
be done without it.''

In the expansion of this doctrine, we find the old rule in
regard to entire payment by a surety has been so modified
as to permit him now to have subrogation where he has paid
part, and the creditor has received the balance from the
debtor or from some other source.

> ''If the principal debtor has himself paid part
> of the indebtedness, and the surety only the bal-
> ance, yet, when once the creditor is wholly satis-
> fied, the same principle of equity which substi-
> tutes the surety who has paid the whole debt to the
> place of the creditor will equally protect the
> surety paying a part thereof, to the extent of his
> payment.  A partial payment is sufficient to estab-
> lish the surety's right as against the principal,
> or any one standing in the place of the principal;
> it is only the creditor who can insist that the
> debt must be paid in full.''
>
>        Sheldon on Subrogation, par. 128, p. 192.

Accord:  37 Cyc. 409; *Journal Pub. Co.* v. *Barber,* 81 S.
E. (N. C.) 694; *Bowen* v. *Barksdale,* 11 S. E. (S. C.) 640;
*Foos Gas Engine Co.* v. *Fairview Co.,* 185 S. W. (Tex.) 382;
*Schoonover* v. *Allen,* 40 Ark. 132; *Comins and Pottle* v. *Cul-
ver,* 35 N. J. Equity, 94; *Magee* v. *Leggett,* 48 Miss. 139; *In
re: Lawrence et al.,* 5 Fed. 349; *Harrison, Admrx.,* v. *Harri-
son,* (Tenn.) 32 A. L. R. 563; *Piedmont Coal Company* v.
*Hustead, supra,* and *Neal* v. *Buffington, supra.*

In the last named case, this court held ''if the surety has
paid part, he may, in such suit, have subrogation to the
creditor's liens after satisfaction of the debtor's property
out of the balance due the creditor.''  These authorities
clearly establish the right of Hustead to *pro tanto* subroga-
tion in this suit after Brown had received satisfaction out
of his debtor's property.

Another contention of demurrants is as follows:

> ''Demurrants being purchasers at a judicial
> sale, under a decree of a court having jurisdiction
> of the subject matter and the parties, their title
> is not invalidated, impaired nor in any way af-

fected by any notice they may have had, of errors
in the decrees under which they hold.''

This contention is not consistent with the principles in
regard to subrogation heretofore announced by this court.
''A purchaser of property with notice of a right in a surety
to charge the same, by way of subrogation, takes its subject
to such equitable right.'' *George* v. *Crim, supra.*

''A purchaser of property with notice of a right in a
surety to charge the same, by way of subrogation, takes its
subject to such equitable right and such notice may be actual
or constructive.'' *Bassett* v. *Streight, et al., supra.*

In the case of *Piedmont Coal Company et al.* v. *Hustead
et al.,* the United States Circuit Court of Appeals held as
follows:

> ''We are therefore satisfied that although by its
> order of sale and decree of confirmation, the Bank-
> ruptcy Court purported to authorize the sale of
> the bankrupt's lands clear and free of the two
> liens in question, they were not sold free of those
> liens.''

The Hustead lien in the attachment suit herein was one of
the two liens to which the court there had reference. It is
argued most strenuously by the demurrants that the deci-
sions of the Federal Court on this and other matters arising
in the above suit are not *res judicata* herein.

The Federal Court had jurisdiction of the parties and the
subject matter in the proceeding referred to. Its decrees
were final and its opinions encompassed the merits of the liti-
gation. The demurrants to this petition are the same parties,
and their privies, who were petitioners in the Federal Court.
The demurrees are the same parties who were defendants in
the Federal Court. The same question decided by the Fed-
eral Court are again presented here by the demurrants. Little
citation of authority is needed in support of the proposition
that a decree of a court of competent jurisdiction upon the
merits concludes the parties and privies to the litigation and
constitutes a bar in any other suit before any other tribunals
involving the same matters.

> ''A sentence, judgment, or decree of a court act-
> ing within the jurisdiction is *res judicata,* pre-

venting the cause of action, fact, or matter adjudicated from being relitigated in any other court between the parties and privies, whether the court rendering it had general or inferior, concurrent or exclusive jurisdiction. Judgments are, as it were, the words of the law and are received as truth. Such words are infallible between the parties, and for the case and court, and for all courts.

Thus, the doctrine of *res judicata* applies alike to the decrees of courts exercising equity jurisdiction and to the judgments of courts of law; and a final determination in either court may be invoked as a bar or estoppel in the other.''

24 Am. & Eng. Cyc. of Law, 721.

''Either party plaintiff or defendant is estopped from alleging in a suit at common law or in chancery anything inconsistent with any point, which has been before adjudicated by a court of either common law or chancery of competent jurisdiction; and the conclusiveness of any judgment or decree extends beyond what may appear on the face of the judgment or decree to every point, which was at issue and determined in the course of the proceedings.''

*Poole* v. *Dilworth*, 26 W. Va. 583.

The demurrants would avoid the rigor of the foregoing rules on the ground that the suit in the Federal Court was dismissed for lack of Federal jurisdiction to enjoin the proceedings in the state court. Section 720 of the Revised Statutes of the United States provides:

''That the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy.''

The Federal District Court and the Federal Circuit Court respectively held that the facts in the case did not warrant its intervention under the statute as construed by the Supreme Court of the United States in *Sargent* v. *Helton*, 115 U. S. 348, and in other Federal decisions. Before reaching its conclusion, however, the Federal Court considered it essen-

tial, if not necessary, to determine and did determine that the trustees in bankruptcy and the Piedmont Coal Company had notice of and profited by the Hustead payment to Brown; that Brown was not a party to, and did not consent to the compromise agreement proposed by the trustees in bankruptcy, whereby the Bankrupt Court attempted to sell the Thompson lands free from all liens to the Piedmont Coal Company, and that the conduct of the Husteads had been such that their claims was in no way affected by the decree of the Bankrupt Court.

If it was necessary for the Federal Courts to decide these matters in order to reach the conclusion that it could not enjoin the prosecution of this suit, then its findings thereon are *res judicata.*

> "A proposition assumed or decided by the court to be true, and which must be so assumed or decided in order to establish another proposition which expresses the conclusion of the court, is as effectually passed upon and settled in that court as the very matter directly decided."

*Blake* v. *Ohio River Rr. Co.,* 47 W. Va. 520.

See generally: High on Injunctions, par. 1586; Van Fleet, Former Adjudication, par. 102; Herman on Estoppel and Res Judicata, par. 400, 403; *Terre Haute & I. R. Co.* v. *Peoria & P. U. Ry. Co.,* 55 N. E. (Ill.) 377.

It is not necessary, however, to our conclusion, for us to determine that the Federal decisions are *res judicata* herein, as we concur fully in those decisions.

Brown's *in rem* judgment having been obtained more than four months before the bankruptcy proceedings were instituted, was, by statute, exempted from the jurisdiction of the Bankrupt Court. How, then, has that court ever acquired the right to extinguish it? Certainly not through any act of the Husteads,—apparently not by the conduct of Brown. The strongest evidence before us of Brown's part in the Bankrupt Court appears in the statements relative thereto in the opinion of the Federal District Court. The proceedings in the Bankrupt Court are not made a part of the petition herein but the petition does make reference to the opin-

ion of the District Court, and prays that it be taken and, read as a part thereof. This opinion states that the Bankrupt Court first credited Brown's claim with the Hustead payment and negotiated with Brown only as to the *balance* due, and that Brown was not a party to the attempt of the Court to sell the Thompson property free from liens. This statement is confirmed by the exception in Brown's assignment to the Coal Company. No reason is presented, and we can perceive no reason why Brown should have submitted, or attempted to submit, his entire claim to the Bankrupt Court after excepting a portion of it from the assignment to the purchaser under the decree of the Court.

The Coal Company made no payment in favor of the Hustead claim. It attempts, through the decree of the Bankrupt Court, to profit by the payment of the Husteads to Brown. It would reap where it had not sown. The decree in bankruptcy in this respect is barren soil—so declared by the Federal Courts. No equity is apparent why this Company, without any consideration therefor, should be given the benefit of the Hustead payment.

A decision of other points raised by demurrants, such as the priorities between the parties, is not proper on the demurrer herein. The question of superior and subordinate rights is not presented by the Hustead petition.

We therefore hold that the Hustead claim for *pro tanto* subrogation, as presented by the Hustead petition, is valid.

The judgment of the circuit court is affirmed.

*Affirmed.*