# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## STRANGE'S ADM'R V. STRANGE AND ALS.

### March 9, 1882.

1. CHANCERY PRACTICE.—No exceptions to commissioner's report below; cause heard on it prematurely, but without exception appearing of record; no exceptions presented in the appellate court can be considered unless for errors appearing on the face of the report, and the hearing will be treated as having been by consent.

2. IDEM.—As to when it is premature or not to hear a cause on a commissioner's report, see V. C. 1873, ch. 171, § 10.

3. HOMESTEAD—*Rules for subjecting to decedent's debts.*—Decedent's entire estate may be subjected to a homestead-waived debt, but the portion not embraced in the homestead deed shall be first subjected. V. C. 1873, ch. 183, § 3.

4. IDEM.—After the exempted property has been set apart, the residue shall be applied towards paying *all* the decedent's debts *ratably* (unless there be some entitled to priority under V. C. 1873, ch. 126, § 25), and after the residue has been exhausted the exempted property may be subjected to pay such portions of the homestead-waived debts as remain unpaid.

5. IDEM.—Decree that administrator turn over to widow money and *choses* in action for her "homestead" before the residue of the estate has been gotten in and applied to the debts, or before it is ascertained whether it will be sufficient to satisfy all the debts, is erroneous. The course proper for the court below is stated by Burks, J., on last page of opinion.

Appeal from decree of circuit court of Fluvanna in suit of James A. Shepherd, adm'r of R. C. Strange, dec'd, against M. S. Strange, widow, and Annie B. and Myrtie, infant daughters of the decedent. The object was to settle the estate. Ths cause was referred to a commissioner to ascertain assets and liabilities. He returned a report on 9th of April, 1875 (during term), and it was confirmed on 10th of same month. It showed liabilities amounting to

$2,253.50, whereof $679.68 were homestead-waived; $807.52 as to which it was unascertained whether they were so or not; and as to the residue there was no waiver. Of the personal assets, which *nominally* amounted to a much larger sum, there had been gotten in only $421.85 beyond what was retained to pay expenses of administration and costs of suit. The widow filed her petition, claiming homestead, which the court below, by decree of 12th April, 1879, assigned her, before the residue of the estate was gotten in and applied to the payment of the debts, or before it was ascertained whether or not it would be sufficient to satisfy all the debts; whilst it seemed probable the exempted property would ultimately have to be resorted to, to some extent at least. From those two decrees Strange's administrator appealed to this court.

*W. E. Bibb,* for appellant.

1. It was manifest error to act on the 10th April, 1879, on a commissioner's report which had only been filed on the preceding day. V. C. ch. 172, § 10.

2. It was erroneous to exempt anything to the widow as homestead until all the obligations containing a waiver of the homestead exemption were discharged. *Reed* v. *Union Bank of Winchester,* 29 Gratt. 719; *White* v. *Owen and als.,* 30 Gratt. 43; *Hatorff* v. *Wellford, Judge,* 27 Gratt. 361; Judge Fitzhugh in *Breeden, &c.* v. *McMinn's Adm'r, &c.,* reported on p. 771 *et seq.,* V. L. J., Dec. No. 1881.

BURKS, J. It is assigned as error in the decree of April 10, 1879, that the cause was prematurely heard on the report of Commissioner Parrish. The report was returned on the 9th day of April and acted upon by the court the next day.

The statute passed March 9, 1836 (Acts 1835-6, ch. 44, § 1),

provided "that after reports made by the commissioners appointed by the several courts of chancery in this Commonwealth, to state and settle accounts to them referred, shall have been returned thirty days *preceding any term*, the cases shall be heard upon such reports, unless there be good cause shown to the contrary." It was under this act that *Gray* v. *Dickinson's Adm'r*, 4 Gratt. 87, was decided. Subsequently (at the revisal of 1849) the act was modified, so as to allow a cause to be heard upon a commissioner's report after it shall have been returned thirty days (omitting the words "preceding any term"), and if the report be under an order recommitting a former report, allowing the cause to be heard without waiting the thirty days. See Code of 1849, ch. 175, § 9, and also Code of 1860, ch. 175, § 10. This section (10) was further amended December 22, 1870 (Acts of 1870–71, pp. 9, 10), substituting "ten days" for "thirty days," and as thus amended the law stands at the present time. Code of 1873, ch. 171, § 10. So that now a cause may be heard upon a commissioner's report at any time after it has been returned ten days, even though returned during the term at which it is heard, and if the report be under an order recommitting a former report the cause may be heard upon it without waiting the ten days.

The objection made here in the present case cannot prevail, because it was waived in the court below. This is not expressed in the decree, but is plainly inferrable from the language employed—that "the said report be *confirmed*, except so far as excepted to." This indicates that there were objections to the report, but none to the hearing of the cause. It rather implies a consent to the hearing. In point of fact, however, as admitted in the argument, no exceptions were ever actually filed. None appear in the record, and the inference from the decree is clear, that whatever objections to the report there may have been—oral suggestions, probably, intended to be afterwards but

never actually embodied in formal exceptions—the hearing, at least, was by consent of parties.

Nor can we go into the examination of any alleged errors, either in the report of Commissioner Parrish, or in the report of the commissioners assigning dower and setting apart to Mrs. Strange the homestead and exempted personal property selected and claimed by her, unless such errors are apparent on the face of the reports. Though, as already mentioned, the decrees complained of recognize exceptions to the report of Commissioner Parrish, and the last decree (April 12, 1879) purports to overrule these exceptions ; yet, as before stated, no exceptions appear in the record. If there were any such, we do not know what they were. It is probable, as before intimated, and as we infer from the argument, that the parties, or some of them, indicated at the hearing a purpose to file exceptions, and the court probably acted upon them as if filed. But as they were never filed, here at least they must go for nought.

Exceptions to the other report were filed by Beavan & Co., creditors of the decedent. Their exceptions were overruled, whether properly or not it is needless to inquire, as their claim is not sufficient in amount to give this court jurisdiction, and if it was, they are not here complaining. They never appealed.

We do not discover any errors on the face of these reports, and we must, therefore, assume that they are correct, and were properly confirmed.

With this assumption, it remains to inquire whether the decree of April 12, 1879, based on these reports confirmed, is also free from error.

We are very decided in our opinion that it is not.

In addition to the real estate claimed by Mrs. Strange as a homestead, of the value of two hundred dollars, the commissioners, in conformity to her selection, assigned to her personal estate of the estimated value of eighteen hundred

dollars. Of this sum (eighteen hundred dollars) four hundred and twenty-one dollars and eighty-five cents was money of the estate in the hands of the administrator, and the residue consisted of *choses* in action. The report of Commissioner Parrish shows that the liabilities of the estate as of April 1, 1879, amounted to $2,253.50. This sum includes $679.68, liabilities in which there is a waiver of exemption; $807.52 as to which it ' is not ascertained whether there is a waiver or not, and as to the residue there is no waiver.

Creditors holding claims with waiver of the benefit of exemption are clearly entitled to resort to the whole estate of the decedent for satisfaction, but the statute (Code of 1873, chapter 183, section 3) provides " that when such [the] debtor or contractor is possessed of other estate than that which he may be entitled to hold exempt from liability  *   *   *  , then such other estate shall be subjected and exhausted before that which the said debtor or contractor may be entitled to hold as exempt is sold."

After the homestead and exempted personal property have been set apart, the residue of the estate should be applied towards the payment of all the decedent's debts ratably (unless there be some entitled to priority under the statute, Code of 1873, chapter 126, section 25, in which case the priority must be respected), and after this residue has been exhausted, the exempted property may be subjected to the payment of such portions of the debts entitled to the benefit of waiver as remain unpaid. This is the construction given to the statute, and, we think, correctly, by Chancellor Fitzhugh, in *Breeden, for, &c.* v. *McMinn's Adm'r and others*, 5 Va. Law Journal, 771, cited in argument.

What was said by this court in *Russell* v. *Randolph and others*, 27 Gratt. 716, *et seq.*, as to the marshalling of securities in respect to the exempted property under the homestead act (Code of 1873, chapter 183), was not necessary to the

decision of that case, as an examination of the opinion will show, and it is apparent that the attention of the judge delivering the opinion was not directed to the third section of the act, and it was not considered.

The error of the circuit court consists in ordering the administrator to pay over and deliver to the widow the money and *choses* in action selected by her and assigned by the commissioners before the residue of the estate has been gotten in and applied to the payment of the debts, or before it is ascertained whether it will be sufficient to satisfy all the debts. It is quite probable, from what appears in the record, that resort, to some extent at least, must be had ultimately to the exempted property, and it would not be right nor equitable to put it beyond the reach of the court until all the claims for which it is liable are satisfied. Upon the bill of the administrator filed for the purpose, the court has taken upon itself the administration of the estate, and the assets ought to be kept under its control until fully administered and the rights of all parties have been enforced. The order, therefore, for the immediate payment of the money and delivery of the *choses* in action to the widow is clearly erroneous.

The proper course for the court to have pursued (after the confirmation of the reports) was to direct the administrator to proceed as speedily as may be to the collection of the debts due the estate, and report his collections to the court from time to time as such collections are made, order a further inquiry as to the claims against the estate, ascertaining accurately the amounts, and distinguishing such as are chargeable, by reason of waiver, on the exempted property, and upon accounts stated distribute the proceeds ratably among all the creditors, and after all the estate, other than the exempted property, has been exhausted, subject that property, as before indicated, to the payment of whatever of the claims entitled to the benefit of the waiver of exemption remains unpaid.

In the meantime, the *choses* in action assigned to the widow should also be collected, and the proceeds, as well as the money assigned to her in the hands of the administrator, should be put out at interest and secured, to await the final order in the administration, and among borrowers of the fund preference should be given to the widow, if she desires the use of the fund, provided she give satisfactory security to have it forthcoming on the further order of the court.

The decree of April 12, 1879, will be reversed, and the cause remanded for further proceedings to final decree in conformity with the foregoing views.

DECREE REVERSED.