# CHARLESTON.

## HAWKER v. MOORE et al.

Submitted September 12, 1894.—Decided December 8, 1894.

| 40 | 49 |
|----|----|
| 41 | 530 |
| 41 | 716 |
| 40 | 49 |
| 48 | 285 |
| 40 | 49 |
| 45 | 611 |
| 45 | 619 |
| 40 | 49 |
| 50 | 49 |
| 50 | 50 |

1. CO-SURETIES—CONTRIBUTIONS.

   Between co-sureties there should be proportionate equality of burden. One who has been compelled to pay the whole, the principal being insolvent, has a right in equity to compel his co-surety to pay his equitably equal part.

2. CO-SURETIES—SUBROGATION.

   To this end he has a right to be subrogated to all the rights and remedies of the creditor, but not to the injury of any one who, by any rule of strict law, or in equity and good conscience, stands on higher ground, or for any reason has a better right. Such a one will not be displaced or his right disturbed. This is the essence of the doctrine of subrogation.

3. FRAUDULENT CONVEYANCE—SECRET TRUST—CO-SURETY.

   A case in which a conveyance was set aside as made on a secret.

trust in fraud of the grantors creditors, and the land conveyed subjected to the lien of a judgment in favor by subrogation of a co-surety, who had been compelled to pay the whole, the principal debtor being insolvent.

J. PHILIP CLIFFORD, for appellant.

JOHN BASSELL, for appellee.

HOLT, JUDGE:

In this case the Circuit Court of Harrison county, by decree entered on the 7th day of January, 1893, set aside as fraudulent the deed made by appellant, Wilson Moore, on the first day of September, 1880, to Elam F. Piggatt, for the twenty five acres of land mentioned, and decreed the sale thereof to pay plaintiff's judgment, from which defendant Moore obtained this appeal.

The facts are as follows: On the 15th day of October, 1880, the Merchants' National Bank of West Virginia, at Clarksburg, was the holder of a promissory note given to the bank by James Hawker, the principal therein, and the defendant Wilson Moore, and plaintiff, Owen Hawker, as his sureties; and the bank on that day obtained a judgment thereon against the three parties named. James Hawker, the principal, was insolvent, and plaintiff, Owen Hawker, was compelled to satisfy and pay the judgment.

Therefore plaintiff was entitled to contribution from his co-surety, defendant Moore, of one-half the amount of the judgment thus paid, and to that extent to be substituted to the judgment lien of the bank against his real estate.

Where one has been compelled to pay the debt of another, equity, as far as it can be done without just ground of complaint on the part of others, substitutes him to all the rights and remedies of the creditor against such debtor. This doctrine of subrogation has been applied freely in this state, and to its full extent, upon the general principles of equity, without the aid of any statute; and, having taken this correct view in the beginning, there has so far never been any need of any statute to correct any mis-step in improper restraint of its application, upon the supposition that a debt once paid must thereafter be treated as non-existent under all circumstances, and to all intents and for all purposes.

The doctrine, as it has been expounded and applied in our courts, has nothing of form, nothing of technicality about it; and he who in administering it, would stick in the letter, forgets the end of its creation, and perverts the spirit which gave it birth. It is the creature of equity, and real essential justice is its object. *Enders* v. *Brune* (1826) 4 Rand. (Va.) 438, 447; *McNiel* v. *Miller* (1887) 29 W. Va. 480 (2 S. E. Rep. 335); *Robinson* v. *Sherman* (1845) 2 Gratt. 178; 2 Bart. Suit in Eq. 1051. The doctrine is eminently calculated to do exact justice between persons who are bound for the performance of the same duty or obligation, and is one therefore, which is much encouraged and protected. "Equality is equity" is on this branch its maxim. It springs naturally out of the two equities of contribution and exoneration, and is in fact one of the means by which those equities are enforced. Bisp. Pr. Eq. (4th Ed.) § 335; *Dering* v. *Earl of Winchelsea*, 1 Cox. 318; *Pendlebury* v. *Walker*, 4 Younge & C. Exch. 441; *Steel* v. *Dixon*, 17 Ch. Div. 825; Brett. Lead. Cas. in Mod. Eq. (2d Ed.) 285, notes. See *Ferguson* v. *Gibson*, L. R. 14 Eq. 379; *Forbes* v. *Jackson*, 19 Ch. Div. 615, under the mercantile law amendment, Act 19 and 20 Vict. c. 97, § 5; 2 Beach Mod. Eq. Jur. § 809. Here the plaintiff has paid off the judgment, and asks the court to give him the benefit of the creditor's lien. Who can object to this? Who is injured by it? Not the bank, for they have received their debt from the plaintiff, and justice binds them to give the plaintiff their vantage ground. Not the principal debtor, for he is insolvent, and has no interest in the matter. Not the co-surety for it is by his fault that the plaintiff had to bear, in the first instance, the whole burden. If he had paid his half, and equality is equity, there would have been no occasion to ask the court to compel him to pay; and it does not lie with him to say that the plaintiff shall not occupy a vantage ground that enables him, by process of law, to enforce the performance of his duty. The other creditors can not complain, for the debt has in truth not been paid, because not paid by the one ultimately bound, but by others, who became his unwilling creditors in due course of law. But if there should be any one who, by any rule of strict law, or in equity and good conscience, stands

on higher ground, or for any reason has a better right, he will not be displaced, or his right disturbed; for that is the essence of the doctrine.   See *Pott* v. *Nathans* (1841) 1 Watts & S. 155; *Eddy* v. *Traver* (1837) 6 Paige 521; *Gross* v. *Davis*, 87 Tenn. 226 (11 S. W. Rep. 92) and 10 Am. St. R. 635, notes; Sheld. Subr. (2d Ed.) § 137; *Id.* p. 209, § 140; 24 Am. & Eng. Enc. Law, p. 189; *Thomas* v. *Stewart* (1888) 117 Ind. 50 (18 N. E. Rep. 505); *Crumlish's Adm'r* v. *Improvement Co.*, 38 W. Va. 390 (18 S. E. Rep. 456) and 23 L. R. A. 120, note 7; *Dugger* v. *Wright* (1888) 51 Ark. 232 (11 S. W. Rep. 213.)

It would answer no useful purpose to take up the testimony and show that it justifies the decree complained of. The fair conclusion to be drawn is that the deed of September 1, 1880, from defendant Moore to E. F. Piggatt, conveying the tract of land of twenty five acres in the bill and proceedings mentioned, was made by Moore to hinder and delay his creditors; and that Piggatt took it, was holding it for him, on some sort of secret trust, the full terms of which do not appear.   But Moore continued to occupy and use the land as his own, as he had always done, without the payment of any rent; and after E. F. Piggatt's death this tract of twenty five acres was, by reason thereof, treated as not belonging to his estate, and was omitted when partition came to be made of his lands among his heirs.

Therefore the decree complained of is affirmed.