## CHARLESTON.

Myers *et al. v.* Miller, *et al.*

Submitted Sept. 10, 1898.—Decided Dec. 10, 1898.

Subrogation—*Sheriff—Bond—Sureties.*

Sureties on the official bond of a sheriff, upon being compelled to make good the default of their principal, will, by the fact of payment, become equitable assignees, and be subrogated to the position of the State in respect of all its securities, liens, and priorities, for the purpose of enforcing reimbursements from their principal. (pp. 610-11-10.)

Appeal from Circuit Court, Berkeley County.

Bill by S. N. Myers and others against Charles H. Miller and others. From the decree, defendant D. W. Shaffer appeals.

*Affirmed.*

Faulkner & Walker, U. S. G. Pitzer, J. N. Wisner and Daniel B. Lucas for appellant.

FLICK, WESTENHAVER & BAKER, for appellees.

MCWHORTER, JUDGE:

S. N. Myers, P. C. Curtis, K. Creque, G. W. Buxton, W. S. Miller, James M. Vanmetre, John H. Miller, J. R. Brown, and Thomas H. Byres, sureties on the official bond of Charles H. Miller, sheriff of Berkeley County, filed their bill in the clerk's office of the circuit court of said county, at the December rules, 1895, against said Charles H. Miller; G. P. Miller, in his own right and as trustee; George N. Vanmetre; W. S. Small and John W. Porterfield, partners trading as Small & Co.; R. L. Thomas; M. A. Lamon; J. H. Miller, J. William Miller, and A. C. Miller, late partners trading as J. H. Miller & Sons; George W. Trimble; D. W. Shaffer; S. S. Felker; the National Bank of Martinsburg, a corporation; the People's National Bank of Martinsburg, a corporation; the Citizens' National Bank of Martinsburg, a corporation; E. L. Horner; C. M. Pine; J. Luther Ropp; William Rutledge; Thomas Kearns; John Simpson; L. C. Gerling; George W. Feidt; Alex. Clohan; Q. P. Riner; D. A. Beard; I. W. Wood; J. M. Small; E. W. Vanmetre; Berkeley County Canning Company, a corporation; James Oliver; J. H. Racey; D. F. Horner; T. A. Potts; Joseph E. Potts; Clara E. Blondell; J. A. Blondell; the Martinsburg, Mining, Manufacturing & Improvement Company, a corporation; George M. Bowers, H. C. Berry, James J. Thompson, James H. Smith, Levi Williamson, Moses Myers, James W. Robinson, D. S. Griffith, and M. T. Ingles, special commissioners in chancery cause of E. B. Faulkner and others, administrators, etc., against Melvina Grantham and others,—alleging: That on the 27th of April, 1895, the State of West Virginia recovered in the circuit court of Kanawha County against the defendant Charles H. Miller, late sheriff of Berkeley County, and the said plaintiffs, as sureties on his official bond, a judgment for the sum of ten thousand, seventy-five dollars and three cents, with interest thereon at the rate of twelve per cent. per annum from that date until paid, and the sum of twenty-eight dollars and ninety cents costs, and exhibit-

ed a copy of the judgment. That writ of summons in the action in which said judgment was rendered against all of said defendants was issued on the 13th day of December, 1894, and was served on the defendant Charles H. Miller and the other defendants on the 19th day of December, 1894 ; and by virtue of the statute in such case made and provided, the said judgment became and is a lien on all the real and personal property owned by the said Charles H. Miller and the other defendants from the day on which the summons in said action was served on them. That on and prior. to the 6th day of August, 1895, they, the said sureties of said Miller, were obliged to pay, and did pay, unto I. V. Johnson, the auditor of the State of West Virginia, and the person entitled by law to receive the said judgment, interest and costs, the full amount of such judgment, principal, interest, and costs, and took from said auditor an assignment and transfer, and without recourse on the said State, of all its right, title, and interest in and to said judgment, and the right to enforce the lien thereof for the purpose of collecting the same out of any property of the said Charles H. Miller, the principal debtor; by means whereof they claim to be subrogated to the lien of the State as of the 19th day of December, 1894, on the real and personal property of said Charles H. Miller. That an execution was issued on said judgment on the —— day of August, 1895, and delivered to the sheriff of Berkeley County, and an abstract thereof, together with the indorsement of the sheriff thereon, was duly docketed in the execution lien docket for the county of Berkeley, but that they are unable to realize anything under said execution out of the real or personal assets of said Charles H. Miller, owing to the fact that it was improper for him to make sale of real estate, because of the cloud upon his title to all of said real estate as hereinafter mentioned, and therefore the whole amount is still due and owing to the said plaintiffs. They then proceeded to set out the real estate of which said Charles H. Miller was seized, and the various judgments recovered by the other defendants to this bill, and prayed that all the creditors holding liens against the

real estate of said Charles H. Miller might be convened, and the amounts and priorities established; that the real estate owned by said Miller might be ascertained; that all the clouds upon the title thereto might be removed; and, in cases where the legal title to the same was outstanding, that the same might be gotten into the name of said Charles H. Miller, and a sale might be made for the pur‧ pose of paying all the liens thereon; and for general relief.

D. W. Shaffer answered the bill, alleging that he recover‐ a judgment against Charles H. Miller for two hundred and three dollars and forty-nine cents, with interest and costs, on December 22, 1894, no part of which had yet been paid, and denying all the allegations of the bill wherein the plaintiffs claim to have right to any prior lien upon the property, real and personal, of Charles H. Miller, because: "First.   He denies that the judgment of the State of West Virginia against said complainants and Charles H. Miller was ever assigned to the complainants.   Secondly. That even if an attempt had been made to assign said judgment, that it is absolutely null and void as to this re‐ spondent and other lien creditors of Charles H. Miller prior to the date of said judgment of the State.   Thirdly.   That said judgment of the State of West Virginia against com‐ plainants and Charles H. Miller was a judgment for taxes, and therefore could not be assigned to the complainants. Fourthly.   The respondant further denies the payment of said judgment by said bondsmen, and demands strict proof thereof.   Fifth.   That the judgment obtained by the State of West Virginia against said complainants and Charles H. Miller did not carry with it any lien, and that it is purely a statutory remedy exercised by the State against said bondsmen, and, if any lien was created there‐ by, the statute gives no right to any person to assign the lien.   Sixth.   This respondent further denies the payment of said judgment to the State for taxes collected by Charles H. Miller by said bondsmen, but alleges, on the contrary, that it was paid in whole or in part by the collection of taxes, prior to and since the rendition of said judgment, by Charles H. Miller and constables of the county of Berke‐ ley, and who turned said money over to said bondsmen.

This respondent asks for a strict account of all taxes collected by any person liable to the debt due the State, and what amount has been paid on Charles H. Miller's indebtness to the State of West Virginia. And he further says that certain assignments have been made of deeds of trust, bonds, notes, and other obligations to W. S. Miller, L. C. Gerling, and others, of certain notes, without valid consideration, and which were liable to the State of West Virginia for taxes due and owing by the said Charles H. Miller, upon which the State of West Virginia had a lien at the time of said assignment by virtue of the statute in such case made and provided; which said amount, if applied to the payment of taxes due said State by said Miller, together with the taxes since collected and turned over for the payment of said indebtedness, would more than pay the same, —all of which matters and things respondent asked might be inquired into; and respondent, not admitting or denying any facts in complainant's bill, except so far as the responses in said answer contained, prayed to be hence dismissed, etc.

Defendant R. L. Thomas filed his answer, setting up his judgment recovered against C. H. Miller and Thomas Kearns for the sum of three hundred and ten dollars and five cents, recovered on the 13th day of June, 1894, and another judgment for the sum of two hundred and two dollars and seventy-five cents, recovered on the 25th day of July, 1895, and another judgment for the sum of two hundred and sixty-six dollars and thirty-five cents, recovered on the 12th day of October, 1894, with interest and costs on all three judgments, part of which said judgments only had been paid, and part of said costs ; and denying all the allegations in plaintiffs' bill wherein the said complainants claim to have the right to any prior lien upon the property, real and personal, of Charles H. Miller, because of the same reasons set out in the answer of the defendant D. W. Shaffer.

On the 30th day of January, 1896, the cause came on to be heard on the bill of complaint and exhibits, process duly executed as to all the defendants, bill taken for confessed, and set for hearing at rules, upon the respective answers

of D. W. Shaffer and R. L. Thomas that day filed, and general replication thereto, and was argued by counsel, and the cause was referred to Commissioner in Chancery L. D. Gerhardt, with instructions: "First, to ascertain and report the real estate owned by the said Charles H. Miller, its fee-simple and annual rental value, and the condition of the title of the said C. H. Miller to the respective parcels of real estate; second, the liens, by judgment, deed of trust, or otherwise, against the real estate of said C. H. Miller, together with the respective amounts and priorities of such liens ; third, any other matter by himself deemed pertinent, or which any of the parties in interest shall require him to ascertain and report;" and to give notice of the execution of said order of reference by advertisement of the same for four successive weeks in some newspaper published in Berkeley county, and to give the notice to lienholders required by section 7, chapter 139, Code.

On the 4th day of April, 1896, the commissioner filed his report, showing the real estate of the said Miller and the liens thereon; to which report the defendant, D. W. Shaffer and the Citizens' National Bank entered their exceptions, as follows : "First. Because the same did not remain ten days in the commissioner's office after completion, as required by law, and as will be seen by his certificate. Second. Because said commissioner did not notify said defendants that said report was to be closed on the 4th of April, or at any other time, but, on the contrary, had notice from the undersigned counsel for defendants that they would introduce further evidence to the commissioner in support of the claims of the defendants, as they had a right to do. Third. Because said report shows on its face that the commissioner has not audited the lien's against Charles H. Miller's real estate according to their respective priorities. Fourth. Because from said report many of the liens audited by the commissioner as judgment liens in a particular class do not show the dates of judgment, or when the same became a lien upon the real estate, by the recordation of the same upon the judgment lien docket or otherwise, as required by law. Fifth. Because no judgments in the report show that they are liens

upon the real estate of Charles H. Miller. Sixth. Because the commissioner's report fails to show whether the so-called reported judgments are liens against the real estate of Charles H. Miller. as the original debtor or only as indorser. Seventh. Because the judgment B, in the fifth class, does not show that it is a lien upon the real estate of Charles H. Miller. Eighth. Because the commissioner reports the lien in judgment B, fifth class, in favor of S. N. Myers, P. C. Curtis, K. Creque, G. W. Buxton, J. R. Brown, and Thomas H. Byers by right of subrogation, and does not show by what authority of law they can be or are subrogated, and these exceptants deny that they are subrogated to the so-called lien set up therein. Ninth. Because the commissioner in the so-called judgment B, in class five, undertakes to fix the lien for the benefit of S. N. Myers, P. C. Curtis, K. Creque, G. W. Buxton, J. R. Brown, and Thomas H. Byers, and that the same carries twelve per cent. interest, the right and the legality of which the exceptants deny. Tenth. Because the commissioner fails to report all the property of Charles H. Miller, as shown by evidence. Eleventh. Because the commissioner's report is irregular on its face, and filled with errors apparent on the face thereof. Twelfth. Because the proofs of certain interests jointly with Charles H. Miller are insufficient, and do not warrant the conclusions of the commissioner."

With his report the commissioner filed depositions of various parties, showing the rental and fee-simple value of the various properties in said Miller; and the deposition of D. C. Westenhaver, stating that the sureties of Charles H. Miller, who are plaintiffs in this suit, had settled this judgment with the State; that it was made through him as their agent; that the amount of cash accepted by the State in full settlement was nine thousand, two hundred and thirteen dollars and six cents, and of this sum eight thousand, six hundred and eighty-two dollars and eighty-two cents principal was paid on or about the 1st day of June, 1895, and the remainder, five hundred and thirty dollars and twenty-four cents, on or about the 1st day of August, 1895; and that, on this payment being completed, I. V.

Johnson, auditor of the State, executed the assignment.
which is filed with the plaintiffs' bill, and also as a part of
his testimony, and there should be credited on the total
amount due the plaintiff the following sums : June 1, 1895,
one hundred and seventy-two dollars and seventy-seven
cents ; August 2, 1895, five hundred and thirty dollars and
twenty-four cents ; August 26, 1895, one hundred and
twenty-two dollars and sixty-five cents ; November 27,
1895, six hundred and twenty-four dollars ; and January
28, 1896, one hundred and thirteen dollars and sixty-seven
cents; and filed a statement marked "B," showing these
payments ; and stated that this is all the money, so far re-
alized from the administration of Charles H. Miller's assets,
properly applicable on his indebtedness to the State ; that
the chief remaining items of personal property were two
judgments against John B. Wilson and S. W. Walker, ag-
gregating about one thousand, three hundred dollars and
one thousand, four hundred dollars, a note for four hundred
dollars made by George D. Walker, and a claim in a suit
against J. M. Wisner for taxes and against George W.
Feidt; that what would be realized from them remained to
be seen ; that, if the claims against Mr. Wisner and Mr.
Feidt were collected, part of it would be applied to the
judgment; that, besides these, there were a number of
fragments of personal property, not very large in the ag-
gregate, and scarcely worth the cost of collection.  Mr.
Westenhaver, in reply to the question :  "It is generally
understoood in the community that, of this amount of
money paid to the State of West Virginia, the same was
raised by a note of Charles H. Miller's father, W. S. Mil-
ler, who became the maker of said note, which was indors-
ed by the other plaintiff's in the bill.  Is that the way that
this amount of money of nine thousand, two hundred and
thirteen dollars and six cents was raised for the payment
of this debt?" says : "Mr. W. S. Miller gave his note for
eight thousand, six hundred and thirty-one dollars and
seventy-five cents, indorsed by the plaintiffs, which was
discounted, and the money paid to the auditor.  The re-
mainder, as stated in my foregoing testimony, and addi-
tional payments, making in all one thousand, five hundred

and sixty-three dollars and thirty-one cents, was paid from the administration of C. H. Miller's assets."

The assignment of the judgment by the auditor, as appears from the exhibit, is as follows: "Whereas, W. S. Miller, Jas. M. Vanmetre, K. Creque, S. N. Myers, P. C. Curtis, J. R. Brown, John H. Miller, Thomas E. Byers, and G. W. Buxton, sureties on the official bond of Charles H. Miller, late sheriff of Berkeley County, have paid to the State of West Virginia, the full amount, principal, interest, and costs, of a certain judgment recovered by the said State of West Virginia against the said Charles H. Miller, late sheriff of Berkeley county, and the parties above named as his sureties, in the circuit court of Kanawha County, West Virginia, on the 27th day of April, 1895: Now, therefore, I, Isaac V. Johnson, auditor of the State of West Virginia, at the request of the above-named sureties, so far as I have the power and authority as such auditor to do so, do hereby assign and transfer, on behalf of the said State, to the sureties aforesaid, the said judgment, without recourse on me or the said State, together with the right to them to use the name of the said State, so far as may be necessary, and without expense to the said State, in suing out further executions on said judgment, or prosecuting any suit or other proceeding for the collection of the said judgment from the said Charles H. Miller, the principal debtor therein. Given under my hand this 6th day of August, 1895. I. V. Johnson, Auditor.

On the 6th day of May, 1896, the cause came on to be further heard upon the papers and proceedings theretofore read and had therein, and on the report of L. D. Gerhardt, master commissioner, returned and filed on the 14th day of April, 1896. "And it appearing to the court that twelve exceptions have been taken to said report, all of which, except as to allowance by the commissioner of interest at 12 per cent. in judgment B, in the fifth class, are not well taken, it is adjudged, ordered, and decreed, that all of said exceptions, except as to said interest, be and are overruled, and said report, subject to a correct calculation of interest, be, and it hereby is, approved and confirmed. And it appearing to the court from said report that the said Charles H. Miller is the owner in fee simple of a tract

of land, containing 173 acres, situated in Berkeley County, W. Va., and of another tract of nine acres, situated in Berkeley County, W. Va.; that he is the owner of another tract of 40 acres, situated in Arden district, Berkeley, W. Va.; and that he is the owner of lot 4 block B, of Martinsburg Mining, Manufacturing and Improvement Co.'s addition to the town of Martinsburg and of lots 3 to 20, inclusive, of Charles H. Miller's Park lot sub-division, adjoining the said Martinsburg Manufacturing, Mining and Improvement Co.'s addition, and also of part of block C of plat No. 3 of the Martinsburg Mining, Manufacturing and Improvement Co.'s addition to the town of Martinsburg, containing 4½ acres, and to which the title of said Charles H. Miller is perfect and is not in dispute. And it further appearing to the court that the liens against said real estate, together with their respective amounts and priorities, are as follows: * * * Fifth Clause. A judgment in favor of George W. Trimble for $32.74, with interest on $27.60, part thereof, from April 4, 1896; and also, of the same class, a judgment in favor of State of West Virginia against Charles H. Miller, late sheriff of Berkeley County, and S. N. Myers, P. C. Curtis, K. Creque, G. W. Buxton, W. S. Miller, James M. Vanmetre, John K. Miller, J. R. Brown, and Thomas E. Byers, as sureties, which judgment having heen paid by said sureties, they are entitled to be subrogated to the lien of the State, and on which there is due said sureties the sum of $8,126.67, with interest at the rate of 6 per cent. per annum on $8,068.96, part thereof, from April 4, 1896, this being a cerrection hereby made in said report, and law giving the State lien from the service of the writ in said action, writ was served on December 19, 1894. Sixth Class. A judgment in favor of D. W. Shaffer for $222.18, with interest on $203.49, part thereof, from April 4, 1896 ; also a judgment in favor of S. S. Felker for $124.79, with interest on $113.04, part thereof, from April 4, 1896. Seventh Class. A judgment in favor of the National Bank of Martinsburg for $111.07, with interest on $99.39, part thereof, from April 4, 1896. Eighth Class. A judgment in favor of National Bank of Martinsburg against Thomas Kearns and Charles H. Miller, for the sum of $139.12, with interest on $126.16, part thereof,

from April 4, 1896.   Ninth Class.   A judgment in favor of the Citizens' National Bank of Martinsburg against the Berkeley Canning Company, E. W. Vanmetre, Alex. Clohan, D. A. Beard, Q. P. Riner, I. W. Wood, John M. Small, D. W. Shaffer, and Charles H. Miller, for $333.46, with interest on $302.77, part thereof, from April 4, 1896 ; also, a judgment in favor of the Citizens' National Bank against all of said parties, except D. W. Shaffer, for $316.19, with interest on $288.80, part thereof, from April 4, 1896; also a judgment in favor of J. Luther Ropp against Thomas Kearns and Charles H. Miller for $72.60, with interest on $64.49, part thereof, from April 4, 1896. * * * Whereupon it is further adjudged, ordered and dccreed that the foregoing liens, according to their priorities and amounts as therein set forth, be, and the same are hereby, established as liens against the real estate of said Charles H. Miller, above described.   And, it appearing to the court that the rents and profits from the real estate of the said Charles H. Miller will not pay off said liens within five years, it is thereupon adjudged, ordered, and decreed that unless the said Charles H. Miller, or some one for him, shall pay off said liens and costs of this suit within ten days from this date, then D. C. Westenhaver, S. W. Walker, H. U. Emmert, and U. S. G. Pitzer, who are hereby appointed as special commissioners for the purpose, shall proceed to make sale at the front door of the court house of Berkeley County by public auction, on the terms, for said tract of 173 acres, of one-third cash, the remainder in two payments, due in one and two years, respectively from day of sale, and as to all other real estate in two equal payments, one-half cash and the remainder in one year, the purchaser giving his notes for the deferred payments, bearing interest from the day of sale, and the title to the real estate sold to be retained until all the purchase money is paid.   Said special commissioners shall give notice of the time, terms, and place of sale by advertisement for four successive weeks in some newspaper published in Berkeley County, and they, or some of them, shall, before proceeding to execute this decree of sale, give bond in the penalty of $2,000 conditioned as required by law, with security to be approv-

ed by the clerk of this court. It further appearing to the court that as to all the other tracts of real estate owned by the said Charles H. Miller, or in which he owns an interest, as shown by the report of said master commissioner, L. D. Gerhardt, this court has jurisdiction thereof in separate suits, brought before the institution of this suit, and that on each or all of said tracts there is, or claimed to be, a just lien in favor of other parties, who are seeking to assert them in their respective suits, as shown by said report; and the court, therefore, being of opinion that such controversies must be settled and determined before it is proper to make a sale of said tracts of land in this cause : Thereupon it is further adjudged, ordered, and decreed that subject to such decrees as may be entered in said several respective causes, that the liens established in the foregoing part of this report be, and are hereby, established as liens also against said other tracts, as shown by said commissioner's report, or of said Charles H. Miller's interest therein, but said special commissioners shall not at this time, without further order, proceed to make sale thereof." From this decree the defendant D. W. Shaffer appealed to this Court.

First exception: Because the report did not remain ten days in the commissioner's office after completion, as required by law, and as will be seen by his certificate. The report shows that it was completed on the 4th day of April, 1896, and was filed April 14, 1896. Section 12, chapter 13, Code, "On Statutes and Rules of Construction," provides, "The time within which an act is to be done shall be computed by excluding the first day and excluding the last, or if the last be Sunday, it shall also be included." So it appears that it was held ten days by the commissioner before filing. Appellant, however, argues that, April 4th being Sunday, the completion of the report would have to date from Monday the 5th. This point would possibly be well taken if it were true, but on examination of calendars for the year 1896, which are considered good authority on that question, it appears that April 4th was Saturday.

Second exception: Because said commissioner did not

notify said defendants that said report was to be closed on the 4th day of April, or at any other time, but, on the contrary had notice from exceptants' counsel that they would introduce further evidence to the commissioner in support of their claims, as they had a right to do. It appears that due notice of the time and place of executing said decree of reference by said commissioner, and the notice to lienholders required, was given by the commissioner, and that his work was done with reasonable and commendable dispatch, yet without haste, and giving all parties ample time, in the absence of anything showing to the contrary, to furnish any evidence desired. "The commissioner has much latitude of discretion in granting continuances of proceedings before him, and the court whose order he is executing will not overrule his action in that respect, unless it is plainly erroneous. Still less will an appellate court reverse a decree for that cause; and in the absence of objections to such adjournments in the court below, and where it does not appear affirmatively that they were irregular, the cause will not be reversed on that account." 2 Bart. Ch. Prac. s. 193. Nothing was offered, by way of affidavit or otherwise, to support this exception, to show that exceptant did not have all reasonable opportunity to offer his evidence. Appellant had entered his exceptions. It does not appear that he asked further time, or desired to except further, or to offer anything in support of those already made, and no objection was made to the hearing. Consent to the hearing is thereby implied. In *Strange's Adm'r* v. *Strange*, 76 Va. 240, a case in which a commissioner's report had been filed, and the cause heard before the report had been filed the time required by the statute, the court say: "The objection made here in the present case cannot prevail, because it was waived in the court below. This is not expressed in the decree, but is plainly inferable from the language employed, that the said report be confirmed, except so far as excepted to. This indicates that there were objections to the report, but none to the hearing of the cause. It rather implies a consent to the hearing. In point of fact, however, as admitted in the argument, no exceptions were actually filed, none appear in the record,

and the inference from the decree is clear that, whatever objections to the report there may have been,—oral suggestions, probably, intended to be afterwards, but never actually, embodied in actual exceptions,—the hearing, at least, was by consent of parties." In the case at bar appellant had entered twelve exceptions to the report of the commissioner, and they were passed upon by the court without objection, as well as no objection to the hearing, and, so far as the record shows, appellant desired to file no further exceptions. The object of the statute is to give parties interested an opportunity to except to the report. *Findley* v. *Smith*, 42 W. Va. 299. (26 S. E. 370, Syl. point 5).

Third exception : "Because said report shows on its face that the commissioner had not audited the liens against Charles H. Miller's real estate according to their respective priorities." The judgment in the fifth class for eight thousand, one hundred and twenty-six dollars and sixty-seven cents, as approved by the court, sought to be enforced by the plaintiffs in this case against the real estate of Charles H. Miller, was obtained by the State of West Virginia, in the circuit court of Kanawha County, against said Miller, as sheriff of Berkeley County, and the plaintiffs, his sureties on his official bond, and was rendered on the 27th day of April, 1895; in which action service of summons was had on the sheriff and his sureties on the 19th of December, 1894, under section 39, chapter 35, Code, which provides : "In any proceedings had under the provisions of this chapter against sheriffs or collectors and their sureties, or any, or either of them, for money due the State, any transfer, assignment or alienation of property, real or personal, or any judgment or decree obtained against or suffered by such sheriff or collector or their sureties or either of them after service upon them, respectively, of summons or notice, shall be deemed fraudulent or void as to any judgment that may be thereafter rendered in favor of the State in pursuance of such summons or notice. But this section shall not apply to a *bona fide* purchaser of any such property without notice." It is claimed by plaintiffs that the lien of the State attached to the real estate of the said Charles H. Miller, and was a valid lien

thereon from the 19th day of December, 1894, the date of the service of the summons; and that the plaintiffs, as said Miller's sureties, having paid said judgment to the auditor of the State, are entitled to be subrogated to all the rights, remedies, and priorities of the State of West Virginia, and to enforce the collection of said judgment against the property of their principal in said bond. It is the placing of this judgment in class five, and giving it force as of December 19, 1894, the date of service of process, and postponing judgment of appellant, rendered December 22, 1894, to class six, which constitutes the ground of their exception. Here comes in the question as to what right, if any, the appellees, as sureties, of Charles H. Miller, are subrogated, by their payment to the State of the judgment due him. In *Dering* v. *Earl of Winchelsea*, 1 White & T. Lead. Cas. Eq. 60 (Md), it is said : "Payment by one who stands in the relation of surety, although it may extinguish the remedy or discharge the security as respects the creditor, has not that effect as between the principal debtor and the surety. As between them, it is in the nature of a purchase by the surety from the creditor. It operates an assignment in equity of the debt, and all legal proceedings upon it, and gives a right in equity to call for an assignment of all the securities, and, in favor of the surety, the debt, and all it obligations and incidents, are considered as still subsisting." In *Orem* v. *Wrightson*, 51 M. 34 (Syl. point 4); "The doctrine of subrogation or substitution is a peculiar feature of equity. It is not founded in contract, but has its origin in a sense of natural justice. So soon as the surety pays the debt of the principal debtor, equity subrogates him to the place of the creditor, and gives him every right, lien, and security to which the creditor could have resorted for the payment of his debt." In the opinion in the same case : "Is a different rule to he applied where the state is a creditor? We can see no reason why it should be. It is not necessary to inquire how, or in what manner, the State's right to rank as a preferred creditor is derived—whether it is a prerogative right derived from the common law, or whether it has been conferred by statute. As is said in some of the cases to which we have

referred, equity, in applying the doctrine of subrogation, looks not to form, but to the substance and essence, of the transaction. It looks to the debt which is to be paid, and not to the hand which may happen to hold it, and will see that the fund charged with its payment shall be so applied. In the present case, the debt of the collector, Leake, was due to the State at the time of his death. It was a charge against him as the principal debtor, and upon the assets left by him. The latter constituted the fund out of which it was to be paid as a preferred debt. And if equity does not regard the hand which holds the debt, and will see the fund charged with its payment shall be so applied, what difference can logically result whether the creditor to whom the surety has made payment is the State or and individual? While this view of law will do no wrong to anyone, it will add facilities in securing and collecting the revenues of the State. If sureties know that they can be subrogated to the priority of the State, less apprehension will be felt in joining in the bonds of collectors, and less delay in payment by solvent sureties. Other creditors are not injured, for, if the State has the first claim upon the fund, it does them no wrong, whether this claim is enforced by the State, or by those standing in its stead." In *Enders* v. *Brune*, 4 Rand. 445, the court, in treating the subject of subrogation, says: "In enforcing these principles, courts of equity look, not to the form, but to the essence of the transaction. They consider the doctrine of substitution, not as one founded in contract, but the offspring of natural justice; nor do they leave it to the creditor to cede his actions, but, so soon as a third person who has become bound with the debtor pays his debt to the creditor, they substitute him to the creditor, giving him every right, every lien, every security, to which the creditor could resort, and if the creditor should with bad faith release any of those securities it would be a bar *pro tanto* to his recovery against the surety." *McNeil* v. *Miller*, 29 W. Va. 480, (2 S. E. 335, Syl. point 1): "The doctrine of subrogation, being the creation of courts of equity, is so administered as to secure essential justice, without regard to form, and is independent of any contractual relation between the parties to

be affected by it." 3 Pom. Eq. Jur. s. 1419 : "The surety who has paid or satisfied the principal's debt or obligation is entitled to be subrogated to, and to have the benefit of, all securities which may at any time have been put into the creditor's hands by the principal debtor, or which the creditor may have obtained by the principal debtor. By the fact of payment, the surety becomes an equitable assignee of all such securities, and is entitled to have them assigned and delivered up to him by the creditor, in order that he may enforce them for his own reimbursement and exoneration." And note 1 to same section and cases there cited. On the subject of sureties on official government bonds, 24 Am. & Eng. Enc. Law, p. 220: "Sureties on bonds for government officials, upon being compelled to make good the default of their principal, will be subrogated to the position of the government, in respect of all its securities, liens and priorities, for the purpose of enforcing reimbursement from their principal or contribution from their co-securities. And it is immaterial how the government's right of priority originated, whether out of common-law prerogative, positive statute, or contract ; once established that it is entitled to rank as a preferred creditor, the same preference will be upheld, by way of subrogation, for the benefit of the surety." *Hawker* v. *Moore*, 40 W. Va. 49, (20 S. E. 848); *Boltz's Estate*, 133 Pa. St. 77, (19 Atl. 303) ; *Turner* v. *Teague*, 73 Ala. 554 ; *Livingston* v. *Anderson*, 80 Ga. 175, (5 S. E. 48) ; *Irby* v. *Livingston*, 81 Ga. 281, (6 S. E. 591); *Hunter* v. *U. S.*, 5 Pet. 173 ; *Robertson* v. *Trigg's Adm'r*, 32 Grat. 76 ; *Crawford* v. *Richeson*, 101 Ill. 351 ; *Hook* v. *Same*, 115 Ill. 431, (5 N. E. 98); 1 Jones, Liens, ss. 99, 100. It is contended that the auditor had no authority to assign the judgment of the State to plaintiffs. It is immaterial whether an assignment is made or not, as it will be seen from the authorities above cited that the doctrine is well established, by an almost unbroken line of decisions, that "a surety who has paid the debt of his principal obligor is subrogated in equity, by the act of payment, not only to the securities of the creditor, but to all his rights of priority"; and and "what difference can logically result whether the

creditor to whom the sureties made  payment is the  State
or an individual?" 51 Md. 34, *supra.*  The statement of the
auditor, purporting to be an assignment,  supplies the evi-
dence of payment of the judgment to the State by the sure-
ties.   It is argued that because one of the  plaintiffs made
his note, and the  others  became  indorsers,  in  order  to
raise the money to pay the State the amount of  the  judg-
ment, as disclosed by the  evidence,  therefore  the  maker
of  the note is the only one who paid anything on the  judg-
ment, and the others cannot be entitled to the  relief, be-
cause they have not suffered.   The  sureties  had a  right,
among themselves, to devise ways and  means  to  get  the
money, and,  as between themselves,  they  may each and
all be equally liable for the amount of the note so made and
indorsed.   They got the  money and  paid  the  debt, and
are entitled to all  the  rights,  remedies,  and  priorities of
the State in respect to said  judgment.   And how is  the
complaining  lienholder in  any  worse   condition than he
would be if the sureties had  not paid the  judgment, and
the State were now pressing its collection instead of  the
plaintiffs?

The fourth exception :  "Because from said  report many
of  the liens audited  by  the  commissioner  as  judgment
liens in a particular class do not  show  the dates of judg-
ment, or when the same became a lien upon the real estate
by recordation of the same upon the judgment lien docket,
or otherwise, as required by law." As to the dates of the re-
cordation of the judgment, on inspection of  the  report,  I
find they are all given, up to and including the eighth class,
and also in all after the ninth class.   Those  judgments in
said ninth class are  reported  as  being  rendered "on the
24th ——, 1895"; but as the judgment of appellant is in the
sixth class, and having in  said  report  priority  over  said
ninth class, he is not affected by the omission,   Yet, in the
final statement or recapitulation of the liens  in his  report
by the commissioner,  he mentions the date of  the  several
judgments in class nine as January 24, 1895.  By reference
to section 5, chapter 139, Code, it will be seen  that "every
judgment for money rendered in this State heretofore,  or
hereafter, against any person,  shall  be  a  lien  on  all  real

estate of or to which such person shall be possessed or entitled at or after the date of such judgment, or, if it was rendered in court, at or after the commencement of the term at which it was rendered," except as provided in the following section, which provides for the docketing of judgments in the county court clerk's office as notice to purchasers only, and gives no additional dignity to the judgment lien as between the parties.

All the other exceptions relied upon, except the tenth and twelfth, have been disposed of in the treatment of the third and fourth.

Tenth :   "Because the commissioner failed to report all the property of Charles H. Miller, as shown by the evidence ;" and twelfth :   "Because the proofs of certain interests jointly with Charles H. Miller are insufficient, and do not warrant the conclusion of the commissioner.   The decree of reference required the commissioner :   "First. to ascertain and report the real estate owned by the said Charles H. Miller. its fee-simple and annual rental value, and the condition of the title of the said Charles H. Miller to the respective parcels of real estate."   The report of the commissioner responds to said decree of reference, and gives all the real estate, the only property on which he was required to report, and all of which, including that held jointly with others, was set out in the bill, and said Miller's interests described therein, and the bill taken for confessed, which supports said finding of the commissioner. I see no error in the decree, and the same is affirmed.

## ON REHEARING.

On the day the decision was handed down in this cause a brief on behalf of the appellant, by Judge Lucas, came to the hands of the Court, which was asked to be taken as petition for rehearing.   The brief starts out with the statement that "the nature of the doctrine of subrogation is fully discussed by this Court in two cases in 29 W. Va. and 2 S. E., by those pre-eminent jurists, JUDGE SNYDER and JUDGE T. C. GREEN," and says :   "They both concur in defining the doctrine [quoting point 1, Syl., in case of *McNeil* v. *Miller*, 29 W. Va. 480, 2 S. E. 335] :   "The doc-

trine of subrogation, being the creature of courts of equity, is so administered as to secure substantial justice without regard to form, and is independent of any contractual relation between the parties to be affected by it." If he had included in his quotation the second point in the syllabus, he would have given us the whole scope of the doctrine which holds that "it is not applied in favor of one who has officiously, and as a mere volunteer, paid the debt of another, for which neither he nor his property was answer, able; but it will be applied whenever the person claiming its benefit has paid a debt for which another was primarily answerable, and which he was compelled to pay in order to protect his own rights or save his own property?" He also cites *Hinchman* v. *Morris*, 29 W. Va. 673, ( 2 S. E. 863 Syl. point 1): "The levying and collecting of a tax, whether state or county, is a matter solely of statutory creation. Such taxes are not debts; and unless they are expressly, or by plain implication, authorized to be assigned legally or equitably, they are incapable of assignment, and no one can be subrogated to the rights and remedies of the State," —and seems to rely very strongly upon this ruling to support his position that the sureties cannot be subrogated to the rights and remedies of the State. This, however, is not a general proposition that no one can be subrogated to the rights and remedies of the State in any case, but in the enforcement of the collection of its revenues in the shape of taxes, as was sought to be done in that case. *Hinchman* v. *Morris, supra.* There are abundant authorities in support of subrogation, to all the rights, remedies, and priorities of the State, of sureties who have paid the State's judgment. The case last cited is dealing with taxes uncollected, as against the individual charged therewith or his estate, when the sheriff had paid the same to the State, and was seeking to be substituted to the lien of the State for the taxes on the lands of the estate of Morris; and it is there held that taxes are not debts, and not capable of assignment, unless they are expressly, or by plain implication, authorized to be assigned legally or equitably. But the status of the case at bar is wholly different. The sheriff gave bond for the faithful discharge of his duties. He

failed to perform his duties.   Surely, this bond is a con-
tract.   Suit is brought upon it, and a large judgment re-
covered against him and his sureties on this contract.
Upon default being made by the sheriff, he became indebted
to the State.   Whether he had collected the taxes, or failed
to collect them is immaterial.   He had failed to return them
as delinquent; and thereby the State, because of the default
of its officer, had lost its remedy against the property of
the taxpayer, and the only remedy it had was to proceed
against the sheriff, its debtor, and his sureties, on the bond
he had given.   It was no longer taxes due the State which
was under the statute a lien upon the property upon
which it was levied, but a debt due to it from its defaulting
officer.   All the elements of taxes had been eliminated.   I
am unable to see the application of *Dent* v. *Wait's Adm'r,*
9 W. Va. 46, cited by appellants.  `In that case Crichton
had  made his  negotiable` note to Wait, who negotiated it.
Protest followed.   The bank secured judgment against
maker and indorser, and execution was levied on property
of Crichton, the principal debtor, who, with Dent as surety,
gave forthcoming bond, which was forfeited, and Dent
compelled to pay.   In a suit to collect, by right of substitu-
tion, against the estate of Wait, the court properly held
that Crichton was the principal debtor; that Dent relieved
Wait at law by becoming the security of Crichton, and
could not charge the estate of Wait, under the equitable
doctrine of subrogation.   *Perrin* v. *Ragland,* 5 Leigh 552;
*Douglass* v. *Fagg,* 8 Leigh, 588.   In *Dent* v. *Wait's Adm'r,*
*supra,* the opinion says:   "There is no doctrine better set-
tled in this State than that, when a security pays a judg-
ment for another, he is entitled to be subrogated to all the
rights and remedies of the creditor against the principal
debtor subsisting at the time he became so bound for the
debt."   *Robinson* v. *Sherman,* 2 Grat. 178; *Powell's Ex'rs,*
v. *White,* 11 Leigh, 309; *Preston* v. *Preston,* 4 Grat. 88; *Hill*
v. *Manser,* 11 Grat. 522.

   It is contended that *Enders* v. *Brune,* 4 Rand, 438; cited
in the original opinion, referred to the United States stat-
ute, and only carried the principle as far as the statute ex-
pressly provided, and which would not be extended.   On

the contrary, the opinion quotes the statute, and shows the rights of sureties under it, and then asks: "Is the case of the plaintiff's within this last act? I incline to think not. The law speaks of principal and surety in the bond. Although these bonds were executed by Brune for the debt of Shelton & Co., and the plaintiff by discharging them paid their debt, yet Shelton & Co. were not principals, and the plaintiff's sureties, in the bonds." In the syllabus it is held: "Where A. gives his bond for duties on goods imported into the United States for B., the importer, and B. is not bound in the bond, if A. discharges the bond it seems that he cannot be placed in a position of the United States, as to priority, in a claim against A., under the law of congress. But upon general principles of equity, A., in such case, will be substituted in the place of the creditor (the United States), and have every preference that the United States were entitled to." The case of *U. S.* v. *Ryder,* 110 U. S. 730, (4 Sup. Ct. 196) cited by appellant, was a suit brought by Ryder as surety on a recognizance in a criminal proceeding, where the court held that "subrogating a surety on a recognizance in a criminal case to the peculiar remedies which the government enjoys is against public policy, and tends to subvert the object and purpose of the recognizance." It is insisted that, if appellees are subrogated at all to the rights of the State, their rights can only date from the date of the judgment in favor of the State. In *Orem* v. *Wrightston,* 51 Md. 34, cited in the opinion first filed herein, and other authorities there cited, as well as in *Enders* v. *Brune, supra,* it is held that the surety is entitled to all the securities, liens, and priorities of the creditor; and, as stated in *Enders* v. *Brune,* he is entitled "to have every preference that the United States were entitled to." But we are told that, "if appellees were thus entitled, by their laches, they have defeated their right of subrogation." The State is not liable for the laches of its officers, nor estopped by their conduct. *U. S.* v. *Kirkpatrick,* 9 Wheat. 720; *U. S.* v. *Vanzandt,* 11 Wheat. 184; *Dox* v. *Postmaster General,* 1 Pet. 318.

Section 25, chapter 30, Code, provides that "the taxes collected under this chapter shall be paid into the treasury as

follows:   One-half of such taxes shall be paid on or before the 20th day of January in the year next after the said taxes shall have been assessed; one-fourth on or before the first day of May, and the remainder on or before the first day of August in such year." The sheriff's term expired December 31, 1892.   He had until August 1, 1893, to pay in the last fourth of the taxes for 1892.   The State commenced her suit December 13, 1894, and obtained judgment April 27, 1895.   Appellees paid the judgment August 6, 1895, and instituted this suit November 26, 1895, but little over three months after their right accrued.   It is not contended that, if the sureties had not paid the judgment, the appellants, or any of them, could have prevented the State from proceeding to exhaust the assets of the sheriff, Miller, in the satisfaction of its judgment, and surely they are in no worse condition because the sureties proceed against it. What new rights have accrued to appellants, or what rights of innocent parties have intervened, to be affected by any delay on the part of appellees in asserting their rights, which would not be equally affected if the State, and not the appellees, was pressing the collection of the judgment against the assets of the sheriff.   Appellant's references to Sheld, Subr., and to 2 Brandt, Sur., are on the subject of laches and are based on decisions where, by the laches of the party seeking to be subrogated, the rights of others had intervened, as in *Gring's Appeal*, 89 Pa. St. 336, cited by appellant: "A joint judgment debtor was forced under execution to pay the whole debt.   It was afterwards shown that he was only a surety.   He neglected to have the judgment marked to his use for more than a year after its payment.   Meanwhile the property of the principal debtor was sold, and the surety claimed that he was entitled to be subrogated to the rights of the creditors under the judgment as against subsequent judgment creditors.   Held, that he had not exercised due diligence in having the judgment marked to his use, and his claim could not be allowed."   This is about the strongest case cited, and in this case it was only after the sale of property that it was discovered that Gring was a surety, and the court say "that it cannot be permitted that a secret equity may be

held unasserted until holders of legal rights have been
thrown off their guard, and lost their opportunity to pro-
tect themselves, by attending a sale against it, and then be
brought forward, to the injury of those who had no notice
of their existence." *Clevinger* v. *Miller*, 27 Grat. 740, is
cited in support of appellant's contentions. That simp-
ply holds that "a sheriff or other officer who pays
an execution in his hands for collection, without an
assignment at the time of the judgment on which it
is founded or the debt, is not entitled to be subrogated
to the lien of the creditor whose debt he has paid, as
against other creditors having liens by judgment or
otherwise." The case of the officer is very differ-
ent from that of a surety of the debtor who is primarily
liable, and who has been compelled to pay his principal's
debt. The officer was under no obligation to pay the debt.
He had a simple duty to perform,—to levy the execution
and collect the money, if he could; if not, to return the
execution. Having paid the debt without assignment, as
against other creditors having liens, by judgment or other-
wise he is regarded as a mere volunteer. So, also, appel-
lant's citation of *People* v. *Onondaga Common Pleas*, 19
Wend. 79, was a case where a sheriff levied an execution
on personal property, and left it with the execution defend-
ant, who removed it from the county, and the sheriff was
made liable for the amount. The court on notice, to the
defendant, permitted a new execution to issue for the ben-
efit of the sheriff, and he levied on the real estate of the
defendant, saving, however, the rights of subsequent in-
cumbrancers attaching after the removal of the personal
property. And the reason given for it was that the levy
by Luther (the sheriff) on the personal property was
*prima facie* a satisfaction, and might well have induced the
other creditors to suppose that the first judgment was
satisfied, and led them on, in their own suits, to expense
and trouble. "All this was very likely in consequence of
Luther's neglect. He was careless in not keeping the prop-
erty, and in leaving it with the defendant." In *Hoge* v.
*Brookover*, 28 W. Va. 304, judgment was rendered for the
State, May 9, 1889, the sureties having paid the judgment;

aud in August, 1892, more than three years after the judgment, filed their bill to be subrogated to the rights of the State which was done. The court in that case, after quoting the act of February 28, 1872, which is the same as section 39, chapter 35, Code, without the last clause, say:"This goes much further than could be claimed for the common law because it makes a judgment, thereafter secured, a lien on all the preperty of sheriff's collectors or their securities, or either of them, from the time when they respectively were served with such notice or summons, pursuant to which the judgment was afterwards recovered. The policy of the State, as manifested in this act, was effectually to prevent any fraud by which she should be deprived of her revenue or debts due her." In *Hawker* v. *Moore*, 40 W. Va. 49, (20 S. E. 848). JUDGE HOLT, in speaking of the doctrine of subrogation, says: "It is eminently calculated to do exact justice between persons who are bound for the performance of the same duty or obligation, and is one, therefore, which is much encouraged and protected. 'Equality is equity,' is on this branch its maxim. It springs naturally out of the two equities of contribution and exoneration, and is in fact one of the means by which those equities are enforced;" and citations, page 51, 40 W. Va., and page 849, 20 S. E. And continuing, he further says: "Here the plaintiff has paid off the judgment and asks the court to give him the benefit of the creditor's lien. Who can object to this? Who is injured by it? Not the bank, for they have received their debt from the plaintiff, and justice binds them to give the plaintiff their vantage ground. Not the principal debtor, for he is insolvent, and has no interest in the matter. * * * The other creditors cannot complain, for the debt has in truth not been paid, because not paid by the one ultimately bound, but by others, who became his unwilling creditors, in due course of law. But if there should be any one who, by any rule of strict law, or in equity and good conscience, stands on higher ground, or for any reason has a better right, he will not be displaced, or his right disturbed, for that is the essence of the doctrine." The statute gave the judgment of the State priority over all judgments recorded or laws

created after service of process in the action instituted by the State, and the rights of no *bona fide* purchaser without notice intervene, and I am unable to see how or in what manner the complaining creditors are injured. I see no sufficient reason for changing my conclusion in this cause,

*Affirmed.*